[Civ. No. 185.   Fifth Dist.   July 2, 1963.]

SIMON GARTER et al., Plaintiffs and Appellants, v. METZDORF ASSOCIATES et al., Defendants and Respondents.

Roland S. Woodruff for Plaintiffs and Appellants.

Lawrence E. Silverton, Paul P. Selvin and Selvin & Cohen for Defendants and Respondents.

BROWN (R.M.), J.—This appeal originated in an unlawful detainer action brought by members of two partnerships, Sands Management Company and Sands Associates, plaintiffs-appellants, against members of a partnership, Metzdorf Associates, defendants-respondents, to recover possession of premises consisting of a hotel-motel facility, including cocktail lounge and restaurant, known as The Sands Caravan Inn, hereinafter referred to as "motel," and for rent, damages for withholding possession, attorneys' fees and costs.

The evidence established the following facts:

Dr. Garter and Dr. Friedman, dentists by profession but experienced in the field of business properties investment, were instrumental in the formation of the two plaintiff partnerships, composed of investors, for the purpose of acquiring by lease or in fee the properties which now comprise the motel and managing the motel business to be conducted therein. On June 7, 1958, the two doctors, in their own names as lessors, entered into a lease with Metzdorf Associates, as lessee, which lease is the founding instrument of this controversy. The lease, in relevant part, provides that Metzdorf would operate the motel, the rental was fixed at $125,000 per annum plus taxes; and Metzdorf was obligated to equip and furnish the motel and expend approximately $220,000 therefor. It is then provided: "The fixtures, furnishings and equipment shall, upon installation, not be removed by Tenant except as set forth hereinafter with respect to termination of this lease. Tenant further agrees to execute a chattel mortgage to Landlord securing Landlord against the obligations of this lease, which chattel mortgage shall list in detail all of the items of fixtures, furniture,

furnishings and equipment and shall contain a provision covering after acquired personal property installed in, on or about the premises. This chattel mortgage, complete in every detail except for the enumeration of the items of fixtures, furnishings and equipment, shall be deemed executed by the execution of this lease, is attached hereto, marked Exhibit "B" and by this reference expressly incorporated herein."

The principal controversy revolves around the construction of paragraph 25 of the lease which provides: "Notwithstanding anything to the contrary herein contained, Tenant's liability for damages for the breach of this lease shall be limited to the exhaustion of the security of furnishings, furniture and equipment subject to the chattel mortgage herein provided for."

On the same day, by a separate contract between the same parties, it was agreed that the demised premises consisted of 67 motel units, and other improvements; that 30 or more units, a restaurant, bar and office building were to be constructed; that pending completion of the contemplated additional improvements, the rental was reduced to $850 per unit per annum.

On June 16, 1958, Metzdorf Associates, as general partner and operator, and Simon Garter and Monroe Friedman, as limited partners and nonoperators, entered into a limited partnership agreement and executed a certificate of limited partnership, whereby Garter and Friedman undertook, among other things, the obligation to provide all necessary furniture, furnishings and fixtures to the motel, cocktail bar, restaurant and other facilities "and to transfer free and clear title to the operating company so that, in turn, said title may be assigned to the Landlord as security for the performance of the lease." The furniture and equipment were to cost $200,000, more or less.

Subsequently and on June 26, 1958, Garter, Friedman, Max Garter and Edward Dienstag entered into an agreement forming Sands Management Company, a partnership; Joseph Cole, J. M. Shea, Jr., Morris Goldstein, Edward Lattig, Abe Casper, Samuel Casper, Michael Lekas and William Gitzes entered into an agreement forming Sands Associates; and the two partnerships so formed entered into an agreement specifying their respective interests and their respective rights, duties and returns from investments in the ownership and management of the motel.

On July 17, 1958, Garter and Friedman duly assigned their interest in the Metzdorf lease to Sands Associates and Sands Management. The assignment was not recorded until February 25, 1960. No notice of the assignment was given to defendants.

On April 18, 1960, defendant Metzdorf was in default in the sum of $50,500 as accrued rent and $20,272 as unpaid taxes. This action was commenced by the filing of a complaint on April 25, 1960. Concurrent therewith, the court granted a writ of possession before trial by virtue of which the plaintiffs were put into immediate possession of the motel premises and the furniture, furnishings and equipment therein.

Upon a nonjury trial the court confirmed possession in plaintiffs but denied a money judgment for accrued rental and unpaid taxes, decreed that Simon Garter and Monroe Friedman, two of the plaintiff members of Sands Management Company, are estopped from denying the validity of an unexecuted continuing indemnity agreement; that Garter and Friedman were found to be general partners with Metzdorf Associates in the operation of the motel; and left open three counterclaims interposed by defendants for other court action. Plaintiffs moved for a new trial, which was denied. Plaintiffs appeal from the judgment, and present two principal issues: (1) insufficiency of the evidence to support the findings and judgment, and (2) the findings in relation to a partnership between defendants and Garter and Friedman do not support the judgment.

Preliminarily, defendants complain, and justly so, about the nature and sufficiency of the plaintiffs' opening brief. A complex and complicated series of business transactions in which two of the plaintiffs, Dr. Simon Garter and Dr. Monroe Friedman, assumed shifting legal relationships to their coplaintiffs and to defendants, form the background against which this appeal is set. The record is voluminous. Numerous lengthy exhibits were received in evidence. Yet, appellants filed a 15-page opening brief, citing only four cases and three texts, all relating to general principles of law; abstained from filing a closing brief; waived oral argument; and rested. Language contained in *Estate of Palmer*, 145 Cal.App.2d 428 [302 P.2d 629], is here pertinent. At page 431 the court said: "Instead of a fair and sincere effort to show that the trial court was wrong, appellant's brief is a mere challenge to respondents to prove

that the court was right. And it is an attempt to place upon the court the burden of discovering without assistance from appellant any weakness in the arguments of the respondents. An appellant is not permitted to evade or shift his responsibility in this manner.''

In this case defendants have met the challenge by filing a well-considered brief. In the interests of justice, this court has accepted the uninvited burden and has made an independent study of the record. ▮▮ But by way of reproof to counsel for appellants and by way of warning to those who follow in his path, we say that a brief so grossly inadequate merits animadversion and violates the rules of appeal procedure.

Turning to the merits: The findings relate that the parties agreed that defendants would have no personal liability for breach of the lease and such agreement was embodied in paragraph 25 thereof; that the meaning and custom in the industry of the provisions of paragraph 25 are that the lessee shall have no personal liability for rents or any other payments required to be made by the provisions of the lease and that custom and usage in the industry were known to plaintiffs prior to the execution of the lease; that the terms of the lease created an equitable lien on the furniture, furnishings and equipment in favor of plaintiffs and that their consent to a chattel mortgage thereof (to a bank) waived any requirement that defendants execute a formal chattel mortgage.

Plaintiffs attack these findings as being without support in the record and contend that the provisions of paragraph 25 (a) are without force and effect because of the failure of defendants to deliver a valid chattel mortgage to the lessor; (b) apply only to damages for breach as distinguished from past due rent; and (c) do not affect the obligation of defendants to pay rent but rather designate the source of assets from which damages for breach of lease may be collected. Stripped of detail, plaintiffs' real quarrel is with the interpretation placed on paragraph 25 by the trial court. ▮▮ These rules are here applicable:

''When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding.'' (*E. K. Wood Lumber Co.* v. *Higgins,* 54 Cal.2d 91, 94 [4 Cal.Rptr.

*523, 351 P.2d 795*]; *Brewer* v. *Simpson,* 53 Cal.2d 567, 583 [2 Cal.Rptr. 609, 349 P.2d 289]; *Primm* v. *Primm,* 46 Cal.2d 690, 693 [299 P.2d 231].)

██ ''When there is substantial evidence or any inference to be drawn from the evidence to support the findings of the trial court, an appellate court will not make determinations of factual issues contrary to those made by the trier of fact. [Citations.]'' (*Smith* v. *Bull,* 50 Cal.2d 294, 306 [325 P.2d 463]; *Ambriz* v. *Petrolane Ltd.,* 49 Cal.2d 470, 477 [319 P.2d 1].)

██ ''In reviewing the evidence, all conflicts must be resolved in favor of the questioned findings and all reasonable inferences indulged in their support.'' (*Butler* v. *Nepple,* 54 Cal.2d 589, 597 [6 Cal.Rptr. 767, 354 P.2d 239].)

██ ''An appellate court will accept and adhere to the interpretation of a contract adopted by the trier of fact and not substitute its own interpretation where parol evidence is introduced in aid of interpreting the contract and from such evidence conflicting inferences may be drawn. [Citations.]'' (*E. K. Wood Lumber Co.* v. *Higgins, supra,* 54 Cal.2d 91, 94; *Quader-Kino A. G.* v. *Nebenzal,* 35 Cal.2d 287, 294 [217 P.2d 650]; *Estate of Rule,* 25 Cal.2d 1, 11 [152 P.2d 1003, 155 A.L.R. 1319].)

██ The testimonial evidence establishes that paragraph 25 was intended to immunize defendants from personal liability of all kinds, including the payment of rent and taxes.

██ As assistance to the court in interpreting the meaning of paragraph 25 of the lease in accordance with its use and understanding in the hotel-motel industry (Civ. Code, §§ 13, 1645; Code Civ. Proc., §§ 1861, 1870, subd. 12), defense witness David S. Barrington, one of the two promotors who were instrumental in bringing the two doctors and the Metzdorf partnership together, testified that, in negotiations with the doctors leading up to the execution of the lease, he told the doctors that Metzdorf Associates could not undertake any personal liability of any kind; that paragraph 25 is a standard provision contained in many hotel-motel leases, including those entered into by such companies as James Stockman, Western Hotels, Ramada Inns, Del Webb, Highway House, Hotel Company of America, and Holiday Inns; that its meaning in the hotel-motel industry is to limit liability of the lessee to the security of the furniture and equipment; that it applied to all kinds of liability, including rental obligations; that the custom and usage and the mean-

ing placed thereon by the hotel-motel industry were known to Dr. Garter and Dr. Friedman; that they, as lessees, had entered into a similar lease containing a counterpart of paragraph 25 of this lease, covering another motel, and had investigated thoroughly to make sure there was no liability on their part outside of the furniture and equipment. Defense witness Charles Engle, also one of the promoters, corroborated Mr. Barrington's testimony in many respects. The testimony of these witnesses was not impeached and stands uncontradicted in the record. Language drawn from *Joseph v. Drew,* 36 Cal.2d 575, 579 [225 P.2d 504], is here pertinent: "It is the general rule that 'the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted as proof of the fact.' [Citations.] While there are exceptions to this rule, the fact to which the witness testified here concerned the generally accepted meaning of a phrase when used in connection with the architectural profession. Under such circumstances, the rule is peculiarly applicable for if it was claimed that the witness did not speak the truth, contrary evidence concerning such generally accepted meaning would have been readily available through any of the numerous members of that profession, and yet none was called."

Barrington, Engle and defendant Dewey Metzdorf all testified that Dr. Garter and Dr. Friedman were advised, prior to execution of the lease, that defendants could not undertake any personal liability, and that rentals would have to be paid out of profits.

It will thus be seen that the interpretation of paragraph 25 of the lease was an issue before the trial court. The only interpretative evidence before the court was produced by defendants, and that evidence showed that the provision has an "accepted meaning" according to the hotel-motel industry to refer to all damages of every kind, including rental; that it limits personal liability of a lessee to the security of the furniture, furnishings and equipment; and that plaintiffs Garter and Friedman, and through them their co-plaintiffs as principals and assignees, knew the accepted meaning of the provision.

The conclusion reached by the trial court with respect to the meaning and legal effect of paragraph 25 of the lease, with which conclusion we are in accord, effectively disposes of plaintiff's further arguments that (1) the law makes a distinction between rental and damages for breach, and that it

was the intent of the parties that in the event of default, accrued rent would be paid but that damages for breach of the lease would be limited to the security of the furnishings and equipment; and (2) that the meaning of paragraph 25 is that it merely designates the source of assets from which damages for breach of lease may be collected. No further discussion of these arguments is required.

Plaintiffs contend that, if it be conceded that paragraph 25 of the lease creates a limited liability in favor of defendants, the basis of that limitation of liability is the security granted to the landlord under a chattel mortgage on the furnishings and equipment; that, since no formal chattel mortgage was executed, the protection of limited liability is not available to defendants. The arguments made under this contention relate to the trial court's findings that the lease created an equitable lien in favor of plaintiffs, and that plaintiffs waived the requirement of a formal chattel mortgage. There is ample evidence to support the findings in this respect. The lease, by its terms, requires defendants to install the furniture and equipment; then, speaking prospectively, requires defendants to grant to plaintiff a chattel mortgage thereon; then, using language of present tense, provides unequivocally that ''This chattel mortgage . . . shall be deemed executed by the execution of this lease. . . .''

In volume 4, Pomeroy's Equity Jurisprudence, 5th edition, section 1237, page 702, it is stated: ''. . . if the intent appear to give, or to charge, or to pledge property, real or personal, as a security for an obligation, and the property is so described that the principal things intended to be given or charged can be sufficiently identified, the lien follows.''

The principle there expressed has been adopted in the decisional law of this state. (See *Washington Lumber etc. Co.* v. *McGuire*, 213 Cal. 13, 20 [1 P.2d 437]; *Title Ins. & Trust Co.* v. *California Development Co.*, 171 Cal. 173, 201 [152 P. 542]; *Nau* v. *Santa Ana Sugar Co.*, 79 Cal.App. 685, 691 [250 P. 705].) Such a lien may embrace property which is not then *in esse*, that is, after-acquired property (*Bank of California* v. *McCoy*, 23 Cal.App.2d 192 [72 P.2d 923]; Civ. Code, §§ 2877, 2883, 2884). The lease, by its terms, created an equitable lien which attached to each item of furniture or equipment as it was subsequently acquired and installed in the motel.

In an attempt to evade this result, plaintiffs argue that the fact that Garter, Friedman and Metzdorf subsequently executed a chattel mortgage on the furniture and equipment which had been installed in the motel in favor of First Western Bank, as security for a loan of $130,000, operates to negate the intent expressed in the lease. They overlook or ignore evidence which supports the trial court's finding that Garter and Friedman, acting as agents for and binding plaintiffs, thereby waived the requirement that defendants execute a formal chattel mortgage. Although not free of conflict, the evidence shows that Garter and Friedman were the original lessors; that they were authorized to act in behalf of all plaintiffs in these transactions; that no notice of the assignment of the lease by them to plaintiffs was given to defendants; that until about the time defendants received notice to quit in April of 1960, defendants had no knowledge that anyone other than Garter and Friedman occupied the position of landlord; that Garter and Friedman negotiated the loan with First Western Bank; they induced Metzdorf to sign the note and execute the chattel mortgage to that bank upon the representation of the two doctors that they would, in turn, indemnify Metzdorf against any personal liability thereby incurred; that the proceeds of the loan were received by Garter and Friedman and by them deposited in a bank account which they controlled, in which account funds belonging to all plaintiffs were deposited; and that the proceeds of the loan were disbursed by Garter and Friedman. The court was justified in concluding that Garter and Friedman were acting for plaintiffs, and that plaintiffs had, by conduct, waived the requirement of a formal chattel mortgage.

Plaintiffs lastly contend that the finding that plaintiffs Garter and Friedman took an active role in the conduct and operation of defendant-lessee's business under the lease, and became and are general partners with defendants does not support the judgment and is not sustained by the evidence. To this contention plaintiffs have devoted only one short paragraph in their brief, have failed to cite any case or statutory authority to support their claim of error, and have invited us to review only a portion of the testimony of Simon Garter, ignoring the remainder of a 290-page reporter's transcript. In view thereof, this court could well hold that the claimed error was waived. (*Estate of Jett*, 202

Cal.App.2d 459, 461 [20 Cal.Rptr. 790], and cases there cited.)

Generally speaking, a finding, conclusion and judgment that two members of a plaintiff partnership are general partners of the defendant, would be unnecessary and surplusage in an action brought in unlawful detainer. However, under the peculiar circumstances which obtain in this controversy, we have concluded that there is no error in this respect.

In *Morrow* v. *Morrow*, 201 Cal.App.2d 235, 239 [20 Cal. Rptr. 338], this court reviewed the function and purpose of findings and the legal requirements as to their form and content. It is there stated, "As is said in *Bertone* v. *City & County of San Francisco*, 111 Cal.App.2d 579, 585 [245 P.2d 29]: ' "The purpose of findings 'is to answer the questions put by the pleadings' " [Citations].'

"The findings should determine ultimate facts and not merely probative facts. There should be full and complete findings on all material issues tendered by the pleadings, whether raised in the complaint or cross-complaint or by affirmative defenses."

In the case under consideration, defendants raised as an affirmative defense in their answer that the landlord-tenant relationship created by the lease had been converted by plaintiffs Garter and Friedman and the defendants into a general partnership venture. Appropriate allegations were made. The record does not disclose that plaintiffs demurred to the answer, or made a motion to strike the affirmative defense, or objected to the finding, or proposed counter findings. The issue was thus before the court. There was voluminous testimony relating to the relationship between Garter and Friedman, on the one hand, and defendants, on the other. It was incumbent upon the court "to answer the questions put by the pleadings" and make findings on the affirmative defense. Implicit in the finding that only Garter and Friedman were general partners of Metzdorf is the implied finding that the landlord-tenant relationship had not been converted into a general partnership relationship. Defendants and the coplaintiffs of Garter and Friedman were entitled to a finding and judgment on the issue.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.