[No. D048066. Fourth Dist., Div. One. Mar. 7, 2007.]

RAUL ULLOA et al., Cross-complainants and Appellants, v. McMILLIN REAL ESTATE AND MORTGAGE, INC., et al., Cross-defendants and Respondents.

## COUNSEL

Alvin M. Gomez for Cross-complainants and Appellants.

Simpson Delmore Greene, John A. Simpson and Daniel W. Towson for Cross-defendants and Respondents.

## OPINION

**McCONNELL, P. J.**—Cross-complainants Raul and Maria Ulloa appeal a judgment entered against them on their cross-complaint in an action against them for specific performance of a real estate sales contract. The Ulloas contend the trial court abused its discretion by granting the motions in limine of cross-defendants McMillin Real Estate and Mortgage, Inc. (McMillin), doing business as Hanson Realty, a Corky McMillin Company (Hanson Realty), Paul Van Elderen, Dallas Woodring and Stanley Kellerup, to exclude evidence pertaining to Kellerup's signing of the sales agreement on behalf of his client, the buyer. We find no abuse of discretion as there is no causal relationship between Kellerup's conduct and any damages of the Ulloas. We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

In 1975 Raul Ulloa purchased a home on 4.5 acres of property at 965 Deodar Road in Escondido, California, in which he and his wife Maria resided. In October 2003 the Ulloas decided to sell the property, and they hired Woodring, an agent with Hanson Realty, to list it. The listing sales price was $1.625 million, later raised to $1.79 million.

Kellerup, another Hanson Realty agent, visited the property and brought it to the attention of his clients Seyed Rezai and Lola Gogue, a married couple who were interested in investment properties for subdivision and development. During negotiations, Rezai instructed Kellerup to sign offers on behalf

---

[1] Many of the Ulloas' factual statements are unsupported by any reference to the record, a violation of appellate practice. (Cal. Rules of Court, rule 8.204(a)(1)(C).) Moreover, the Ulloas and cross-defendants cite pleadings, instead of evidence, in support of many factual statements. The parties, however, appear to agree on the material facts.

of "Lola E. Gogue, and/or assignee," and he did so unbeknownst to the Ulloas. In January 2004 the Ulloas signed a fifth counteroffer at $1.69 million, with partial seller financing. Kellerup submitted the fifth counteroffer to Rezai, and Rezai directed him to accept the offer and sign the document for Gogue. She then assigned her interest to Walton Escondido LLC (Walton Escondido), an investment company she and a third party own.

Shortly thereafter the Ulloas showed their daughter, Adriana Ulloa, the fifth counteroffer. She instructed them to cancel the sale on the ground they were not advised of the buyer's true identity, given the assignment, or of potential tax consequences of the seller-financed sale. She prepared a cancellation letter for her parents.

As a consequence, Walton Escondido sued the Ulloas for specific performance. In turn, the Ulloas cross-complained against McMillin, Hanson Realty, its office manager, Van Elderen, and Woodring and Kellerup for fraud and related counts.[2] The Ulloas alleged cross-defendants failed to disclose the identity of the true purchaser of the property and "induced and defrauded [them] into signing the purchase agreement for their home and carrying back a note in excess of one million dollars under the premise they were doing so for Lola Gogue." (Some capitalization omitted.) The cross-complaint also alleged cross-defendants knew the Ulloas "had minimal education, minimal knowledge and understanding of the English language, and were unsophisticated in real estate transactions. . . . [I]t was not disclosed to the [Ulloas] that they would be subject to substantial taxes as a result of the transaction which would leave [them] without the ability to reinvest in another home."

Walton Escondido pursued its specific performance action until January 2005, when it dismissed the complaint. The Ulloas, however, continued to prosecute their cross-complaint. When Kellerup was deposed, the Ulloas first learned he signed the fifth counteroffer on Gogue's behalf. Kellerup testified he intended to have Gogue personally sign escrow instructions and other documents necessary to consummate the deal.

At trial cross-defendants brought motions in limine to exclude evidence of Kellerup's conduct, and to exclude the testimony of the Ulloas' expert that he

---

[2] The cross-complaint also named Walton Escondido and other parties as cross-defendants, but they are not involved in this appeal.

breached the applicable standard of care by signing the acceptance for Gogue. The cross-defendants argued the evidence was irrelevant because Walton Escondido's action against the Ulloas was based on their breach of the sales contract and Kellerup's signing of Gogue's name did not preclude her or her assignee from suing for specific performance. Under the statute of frauds, an agreement for the sale of property is valid if it is in writing and "subscribed by the party sought *to be charged.*" (Civ. Code, § 1624, subd. (a)(3), italics added.)

In opposition to the motions, the Ulloas argued "it is unethical for a broker/agent to sign on behalf of a client without a Power of Attorney or written authorization." They complained that Kellerup did not disclose his conduct "even though he knew that they were being sued for Specific Performance of a contract that was never signed by Lola Gogue."

The court granted the motions in limine for lack of causation between Kellerup's conduct and any damages the Ulloas suffered. The court explained Kellerup's signing of the sales document for Gogue "doesn't look good," but it was irrelevant to the Ulloas' reasons for reneging on the sales contract and the specific performance action against them. After unsuccessfully seeking writ review from this court, the Ulloas filed a motion for reconsideration. The court denied the motion.

The Ulloas then acknowledged that because of the court's rulings on the in limine motions they had no case against Kellerup or Van Elderen. The cross-complaint proceeded against McMillin and Woodring and judgment was entered in their favor.

## DISCUSSION

### I

" 'Although not expressly authorized by statute, [a motion *in limine*] is recognized in decisions as a proper request which the trial court has inherent power to entertain and grant.' [Citation.] The purpose of the motion 'is to avoid the obviously futile attempt to "unring the bell" in the event a motion to strike is granted in the proceedings before the jury.' [Citation.] The scope of such motion is any kind of evidence which could be objected to at trial,

either as irrelevant or subject to discretionary exclusion as unduly prejudicial." (*Clemens v. American Warranty Corp.* (1987) 193 Cal.App.3d 444, 451 [238 Cal.Rptr. 339]; see Evid. Code, § 352.) Rulings on motions in limine to keep particular items of evidence from the jury are reviewed for abuse of discretion. (*Mechanical Contractors Assn. v. Greater Bay Area Assn.* (1998) 66 Cal.App.4th 672, 676–677 [78 Cal.Rptr.2d 225].)

## II

■ " ' "Causation" is an essential element of a tort action. Defendants are not liable unless their conduct . . . was a "legal cause" of plaintiff's injury. [Citations.]' [Citation.] 'Generally, the burden falls on the plaintiff to establish causation.' " (*Whiteley v. Philip Morris, Inc.* (2004) 117 Cal.App.4th 635, 696 [11 Cal.Rptr.3d 807]; see *Brookhouser v. State of California* (1992) 10 Cal.App.4th 1665, 1677 [13 Cal.Rptr.2d 658] ["It is axiomatic that a defendant cannot be held liable in tort for an injury he or she did not cause"].) "Causation is generally a question for the jury unless reasonable persons could not dispute the absence of causation, in which case it may be treated as a question of law." (*Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 289 [54 Cal.Rptr.2d 655].)

■ The trial court correctly determined that as a matter of law there is no causal connection between Kellerup's conduct and any damages to the Ulloas. The Ulloas alleged in their cross-complaint that cross-defendants damaged them by not divulging that Gogue planned to assign her interest in the sales contract to Walton Escondido or the tax consequences of a seller-financed sale. The cross-complaint did not concern Kellerup's signing of the fifth counteroffer for Gogue, and the Ulloas did not even learn of it until well after the pleading was filed.

Moreover, regardless of whether Kellerup or Gogue signed the fifth counteroffer, or whether Kellerup disclosed his conduct to the Ulloas, the statute of frauds would not invalidate the contract or preclude Walton Escondido from suing them for specific performance. The Ulloas signed the document before it was submitted to Kellerup for his clients' approval. Civil Code section 1624 provides in part: "(a) The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party *to be charged* or by the party's agent: [¶] . . . [¶] (3) An agreement . . . for the sale of real property . . . ; such an agreement, if

made by an agent of the party sought *to be charged*, is invalid, unless the authority of the agent is in writing, subscribed by the party sought *to be charged*." (Italics added.)

 Under Civil Code section 1624, "party to be charged" means "the party to be charged in court with the performance of the obligation, i.e., the *defendant* in the action brought to enforce the contract." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 359, p. 406; see *Harper v. Goldschmidt* (1909) 156 Cal. 245, 246 [104 P. 451].) Indeed, to prosecute such an action the buyer need not have signed the contract at all. (*Steel v. Duntley* (1931) 115 Cal.App. 451, 452 [1 P.2d 999].) Accordingly, the source of Gogue's signature on the fifth counteroffer is immaterial. Indeed, paragraph 8 of that document acknowledges that the buyer's confirmation of acceptance "is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmance of Acceptance has occurred." (Boldface omitted.) Had Gogue not consented to the purchase, she would have had recourse based on Kellerup's conduct, but she did consent as evidenced by her assignee company's specific performance suit against the Ulloas.

The Ulloas cite *Timmsen v. Forest E. Olson, Inc.* (1970) 6 Cal.App.3d 860 [86 Cal.Rptr. 359] (*Timmsen*), for the proposition that a real estate agent who signs an acceptance of an offer for his or her client is liable for the offeror's expenses in defending against a specific performance suit. *Timmsen*, however, is unavailing. In *Timmsen*, the issue was whether the trial court erred by granting nonsuit after the plaintiffs' opening statement, and the appellate court found error, accepting as true the contents of the statement.

In summary, the opening statement claimed the plaintiffs (the Timmsens) were inexperienced and unsophisticated in real estate matters; they hired a broker (Forest E. Olson, Inc. (Olson)) to list their property, and the agent who handled the matter for Olson (Ramser) inserted a subordination clause into the listing agreement that neither he nor the plaintiffs understood; Ramser and another Olson agent (Masters) colluded to pressure the Timmsens into selling their property to a client of Masters, a builder (Burrow), on unfavorable terms, including an onerous subordination agreement not explained by Ramser or Masters; when the Timmsens refused to sign escrow instructions on the advice of their attorney Masters threatened them with damages of at least $5,000; and during negotiations between the Timmsens and Burrow, Ramser and Masters disregarded the Timmsens' interests and espoused Burrow's position. (*Timmsen, supra*, 6 Cal.App.3d at pp. 864–866.)

This case, in contrast, does not involve collusion between Kellerup and Woodring, and Kellerup never met with the Ulloas or attempted to influence their decision. Rather, here the parties, through their respective agents, conducted negotiations at arm's length. Further, there is no evidence the Ulloas were pressured into executing the fifth counteroffer or that before signing it they raised any objection to its terms.

In *Timmsen,* the plaintiffs also claimed in opening statement that Masters signed an acceptance of their counteroffer on Burrow's behalf without authority in writing to do so, "and the agreement was therefore unenforceable under the statute of frauds (Civ. Code, § 1624)," yet the defendants did not reveal the unenforceability to the Timmsens and instead threatened them with litigation if they did not consummate the sale. (*Timmsen, supra,* 6 Cal.App.3d at p. 871.) *Timmsen,* however, does not discuss the substance of Civil Code section 1624 or whether the plaintiffs' claim that the statute rendered the counteroffer unenforceable by the buyer was accurate. Indeed, the court noted the "issues presented are involved," yet the defendants submitted a short brief without any points and authorities and "no statement of or argument on the basic issues before this court, thus placing upon the court the sole burden of analyzing plaintiffs' arguments." (*Timmsen, supra,* 6 Cal.App.3d at pp. 868–869.)

■ " 'It is axiomatic that cases are not authority for propositions not considered.' " (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 [53 Cal.Rptr.2d 81, 916 P.2d 476].) "The holding of a decision is limited by the facts of the case being decided, notwithstanding the use of overly broad language by the court in stating the issue before it or its holding or in its reasoning." (*McGee v. Superior Court* (1985) 176 Cal.App.3d 221, 226 [221 Cal.Rptr. 421].) Accordingly, *Timmsen* provides no precedent for the statute of frauds issue here. Indeed, as the *Timmsen* court cautioned, its reversal of the nonsuit did not concern "what conclusions of law will be drawn" from the evidence introduced at trial. (*Timmsen, supra,* 6 Cal.App.3d at p. 872.)

The court did not abuse its discretion by granting cross-defendants' motions in limine to exclude evidence that Kellerup signed Gogue's name on the fifth counteroffer, and an expert's opinion that the conduct breached the applicable standard of care. Even if Kellerup's conduct violated Hanson Realty's policy, was potentially subject to some type of administrative discipline or breached a duty of disclosure to the Ulloas, their theory of. causation is far too attenuated to support a finding of liability against cross-defendants for their litigation expenses in the specific performance action.

## DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal.

Haller, J., and Aaron, J., concurred.