[Civ. No. 46351. Second Dist., Div. Four. Dec. 19, 1975.]

WALES E. SMITH et al., Plaintiffs and Appellants, v.
JAMES L. ROACH et al., Defendants and Respondents.

**COUNSEL**

Steven Edmondson for Plaintiffs and Appellants.

Salute & Allen, Lawrence Allen, Krentzman & Kritzer, Paul L. Krentzman, Robins & Fields and Alan M. Fields for Defendants and Respondents.

## OPINION

**DUNN, J.**—Plaintiffs appeal from a judgment of nonsuit in favor of all defendants entered in a jury trial after the trial court granted defendants' motion for nonsuit made at the conclusion of plaintiffs' opening statement (Code Civ. Proc., § 581c) at the trial of their action for damages for fraud.[1]

The action was commenced January 12, 1972, against James Roach, Margaret Roach, Ardythe Raphael and Quality Properties. The complaint, framed in one count, sought damages for defendants' alleged fraud in inducing plaintiffs to purchase an apartment house in Inglewood.

Plaintiffs' opening statement was, in essence, as follows: the apartment house had 11 units; early in January 1969 it was owned by defendants Roach, who had listed it for sale with defendant Quality Properties; defendant Raphael was a saleswoman employed by Quality Properties; plaintiff Wales Smith previously had business dealings with Raphael, and had indicated to her that he was interested in purchasing income-producing property; accordingly, late in December 1968, Raphael suggested to Smith that he consider purchasing the apartment building

---

[1]Plaintiffs also appeal from: (1) the order granting the motion for nonsuit; (2) an order "denying motion for reconsideration before entry of judgment wherein plaintiffs offered to amplify the opening statement in the nature of an offer of proof"; (3) an order, made after entry of judgment, which granted to each defendant leave to file an amendment to his answer; and (4) an order denying plaintiffs' motion for leave to file a first amended complaint. None of these orders is appealable. (See Code Civ. Proc., §§ 581d, 904.1; *Palazzi* v. *Air Cargo Terminals, Inc.* (1966) 244 Cal.App.2d 190, 192 [52 Cal.Rptr. 817]; *Potter* v. *Richards* (1955) 132 Cal.App.2d 380, 386 [282 P.2d 113]; *Raff* v. *Raff* (1964) 61 Cal.2d 514, 517-518 [39 Cal.Rptr. 366, 393 P.2d 678]; 6 Witkin, Cal. Procedure (2d ed.) Appeal, §§ 64, 81, pp. 4079, 4091-4092.) Accordingly, the purported appeal from each order is dismissed.

More than two months after filing their notice of appeal from the judgment of nonsuit, plaintiffs filed a "supplemental notice of appeal" from an order refusing to hear plaintiffs' demurrer to, and motion to strike, an amendment to the answer of each defendant. That order likewise is nonappealable (see *Raff* v. *Raff, supra,* 61 Cal.2d at pp. 517-518; *People* v. *Keligian* (1960) 182 Cal.App.2d 771, 774-775 [6 Cal.Rptr. 680]; *Simmons* v. *Santa Barbara Ice etc. Co.* (1958) 162 Cal.App.2d 23, 27-28 [327 P.2d 141]), and the purported appeal therefrom is dismissed.

listed by the Roaches; after two weeks of negotiations, Smith offered to purchase the building for $140,000; the offer was accepted; in order to induce Smith and his wife to make the purchase, Raphael, acting as agent of both Quality Properties and the Roaches, made representations orally and in writing to the Smiths; the principal representation was that the apartment building would be worth $140,000 only if its present schedule of rents were raised; Raphael represented that the rents in the building were "understated" by about $350 a month, and that she would raise the rents to no less than $1,920 per month; with these increased rents, and with the existing expenses, the building would be worth $140,000; plaintiffs then would have a net spendable income of $500 per month; the building also would show a "principal build-up" or an "equity build-up"; it then would be a good investment and would show a 30 percent return on a down payment of $15,000, as well as a "net spendable"; this was the representation upon which plaintiffs chiefly relied in purchasing the building; plaintiffs made a down payment of $15,000 cash; the balance of $125,000 was represented by an "all-inclusive" deed of trust (covering four notes and trust deeds), requiring payments of $1,006 per month; before the close of escrow Raphael represented to plaintiffs in writing, on behalf of Quality Properties and the Roaches, that she would manage the building free of charge for one year; such representation was made to "bolster" the previous representation that Raphael would increase the rents; the escrow closed on January 22, 1969; two days later, Raphael sent the tenants notices of increased rent; by these notices the rent was increased a total of $350 per month on the 11 units; Raphael had not previously consulted any of the tenants to ascertain whether they would pay such increases and "in making these representations she made them without a sufficient basis for belief in their truth and that she was negligent in making them; that they induced reliance by the Smiths to buy the apartment building"; when the escrow closed, every unit in the building was occupied; 60 days after the notices of increased rent were sent, the building was 65 percent vacant; no new tenants could be secured, either at the existing rents or under the proposed new rent schedule; during the time Raphael managed the building the situation did not improve; the building remained with such a vacancy factor that the rents were not sufficient to meet either the operating expenses or the payments of principal on the trust deed; in May 1969 plaintiffs discharged Raphael and complained to her about the representations she had made; when plaintiffs took possession of the building, its actual value was only $110,000; as of the date of the purchase, plaintiffs were damaged in the sum of their down payment; in the succeeding months they incurred additional damages because they

were required to pay money, out of their own pocket, in order to meet the payments on the trust deed.

The opening statement further disclosed: when plaintiffs discharged Raphael, they were aware of the misrepresentations, but did not elect to rescind the contract of purchase; instead, they attempted to secure tenants in order to keep up payments under the contract; to this end, from July 1969 to December 1971, plaintiffs rented the units in the building to students of the Atlantic School, an institution which trains flight personnel for airlines; the building was unfurnished when plaintiffs purchased it; in order to rent to the students, plaintiffs were obliged to furnish the units, and paid $9,000 for furniture; during the period July 1969 - December 1971, the building was occupied exclusively by students of the Atlantic School; by the end of 1971 this arrangement no longer enabled plaintiffs to meet the payments on the trust deed; in February 1972, in lieu of foreclosure by the Roaches (beneficiaries under the trust deed), plaintiffs surrendered possession of the building to the Roaches and, at a loss to plaintiffs, sold the furniture; plaintiffs sustained damages totalling approximately $42,000.

At the conclusion of plaintiffs' opening statement, defendant Quality Properties moved for a nonsuit on the ground the statement showed that, under *Schmidt* v. *Mesmer* (1897) 116 Cal. 267 [48 P. 54], plaintiffs had waived their right to recover damages for the alleged fraud. Defendants Raphael and Roach joined in the motion. After considerable discussion between the court and all counsel, the court granted the motion, stating: "I'm satisfied, based on your opening statement, that you fall squarely within *Schmidt*."

■ A motion for nonsuit on plaintiff's opening statement is authorized by Code of Civil Procedure section 581c.[2] In considering such a motion, the court must accept as proved all of the facts counsel says he expects to prove, and must indulge in all favorable inferences reasonably arising from those facts. (*Cole* v. *State of California* (1970) 11 Cal.App.3d 671, 674 [90 Cal.Rptr. 74]; *Timmsen* v. *Forest E. Olson, Inc.* (1970) 6 Cal.App.3d 860, 867-868 [86 Cal.Rptr. 359].) A nonsuit on an opening statement may be granted "only where it is clear that counsel has

2Code of Civil Procedure section 581c: "After the plaintiff has completed his opening statement, or the presentation of his evidence in a trial by jury, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a judgment of nonsuit. [¶] If the motion is 'granted, unless the court in its order for judgment otherwise specifies, such judgment of nonsuit operates as an adjudication upon the merits."

undertaken to state all of the facts which he expects to prove, and it is plainly evident that the facts thus to be proved will not constitute a cause of action." (*Bias* v. *Reed* (1914) 169 Cal. 33, 37 [145 P. 516]; *Young* v. *Desert View Management Corp.* (1969) 275 Cal.App.2d 294, 295 [79 Cal.Rptr. 848]; *Palazzi* v. *Air Cargo Terminals, Inc.* (1966) 244 Cal.App.2d 190, 194 [52 Cal.Rptr. 817]; *Wright* v. *Arcade School Dist.* (1964) 230 Cal.App.2d 272, 275 [40 Cal.Rptr. 812]; *Weyburn* v. *California Kamloops, Inc.* (1962) 200 Cal.App.2d 239, 241 [19 Cal.Rptr. 357].) ■ Only the grounds of the motion specified by the defendant may be considered by the trial court in its ruling, or by the appellate court on review. If such grounds are insufficient, a nonsuit is improper even though other good grounds may exist. (*Timmsen* v. *Forest E. Olson, Inc., supra,* 6 Cal.App.3d at p. 868; 4 Witkin, Cal. Procedure (2d ed.) Trial, § 362, p. 3159.)

The ground of the motion for nonsuit in the instant case was that the opening statement showed plaintiffs had waived damages for fraud by furnishing the units in the apartment building and renting such furnished units to students of the Atlantic School. As authority for this contention, defendants cited and relied upon *Schmidt* v. *Mesmer* (1897) *supra,* 116 Cal. 267, which states (pp. 270-271): "If, after his [plaintiff's] knowledge of what he claims to have been the fraud, he elects not to rescind, but to adopt the contract and sue for damages, he must stand toward the other party at arm's length; he must on his part comply with the terms of the contract; he must not ask favors of the other party, or offer to perform the contract on conditions which he has no right to exact, and must not make any new agreement or engagement respecting it; otherwise he waives the alleged fraud."

In *Bagdasarian* v. *Gragnon* (1948) 31 Cal.2d 744, 751 [192 P.2d 935], the *Schmidt* case was disapproved to the extent it indicates that *the making of a request which is not complied with* in itself constitutes a waiver. However, defendants' argument in the trial court on their motion for nonsuit, and their reply brief on this appeal, show that the precise point in *Schmidt* upon which they rely is that a plaintiff waives the fraud if he makes "any new agreement or engagement" concerning the subject matter of the contract to which the fraud applies.

■ Under this aspect of *Schmidt,* a plaintiff waives his right to seek damages for fraud only if, after he discovers the fraud, he makes a "new agreement or engagement" *with the other party to the original contract* (the contract allegedly procured by the fraud of that party), *and such new*

*agreement* or engagement *results in* a compromise and adjustment of the plaintiff's rights under the original contract, thereby *superseding that contract.* (See *Burne* v. *Lee* (1909) 156 Cal. 221, 226-228 [104 P. 438]; Annot. 106 A.L.R. pp. 173-177.) Plaintiffs' opening statement here showed: after plaintiffs discovered defendants' alleged fraud in inducing plaintiffs to purchase the apartment building, plaintiffs entered into an arrangement with the Atlantic School to rent units in the building to students of that school. Thus, plaintiffs' new agreement was not with defendants, but with a third party; that agreement did not affect the contract between plaintiffs and defendants Roach, which provided for plaintiffs' purchase of the apartment building from the Roaches. Indeed, the opening statement indicated that throughout the period during which plaintiffs rented units in the building to students of the Atlantic School, plaintiffs continued to perform their contract with the Roaches by making the required payments on the building.

In short, the opening statement did not show that plaintiffs entered into a new agreement or engagement with any of the defendants which altered or modified the terms of the original contract for purchase of the apartment building. The opening statement thus failed to establish that plaintiffs waived their right to seek damages for defendants' alleged fraud in procuring that contract. It follows that the motion for nonsuit was improperly granted.

The judgment is reversed. The appeals from the orders enumerated in footnote 1 are dismissed.

Kingsley, Acting P. J., and Jefferson (Bernard), J., concurred.