[No. A021856. Sixth Dist. Nov. 8, 1985.]

LORAL CORPORATION et al.,
Plaintiffs, Cross-defendants and Appellants, v.
ROBERT M. MOYES, Defendant, Cross-complainant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*The opinion filed contains portions which need not be published. Pursuant to rule 976.1 of the California Rules of Court subdivision D of part I, and part II are not published.

COUNSEL

Leff & Mason, Leff & Stephenson and Robert R. Thornton for Plaintiffs, Cross-defendants and Appellants.

Michael L. Harrison, Thomas R. Berthold, Marc H. Greenberg, Harrison & Kaylor, Harrison & Hearn and Harrison, Hearn & Berthold for Defendant, Cross-complainant and Appellant.

OPINION

AGLIANO, Acting P. J.—The primary question in this proceeding is the validity of a termination agreement between an employer and its former employee which, inter alia, restrains the former employee from disrupting, damaging, impairing or interfering with his former employer's business by "raiding" its employees. Plaintiff Loral Corporation and its subsidiary, Conic Corporation, brought this action against its former executive officer, Robert Moyes, claiming Moyes breached the agreement by inducing employees of plaintiff to work for Moyes' subsequent employer, Aydin Corporation.

The trial court granted judgment of nonsuit on August 26, 1981, after plaintiffs' opening statement as to this cause of action on the ground the restriction against hiring away the plaintiff's employees was an unlawful restraint of competition, stating "the contract in its entirety is null and void *ab initio.*"

The court also determined, contrary to Moyes' contention, that the termination agreement had not been induced by the employer's fraud.

We will reverse the judgment of nonsuit on the employer's action for breach of contract and remand the matter for trial and/or further proceedings on these and subsidiary issues.

I

*The Appeal*

A. *Review of Grant of Motion for Nonsuit*

█ A motion for nonsuit is authorized by Code of Civil Procedure section 581c.[1] The motion is tantamount to a demurrer to the evidence (*Archibald Estate* v. *Matteson* (1907) 5 Cal.App. 441, 445 [90 P. 723]; *Reaugh* v. *Cudahy Packing Co.* (1922) 189 Cal. 335, 339 [208 P. 125]) by which a defendant can test the sufficiency of the plaintiff's case before presenting his or her own. (*Carson* v. *Facilities Development Co.* (1984) 36 Cal.3d 830, 838 [206 Cal.Rptr. 136, 686 P.2d 656].) It presents a question of law (*Archibald Estate, supra,* at p. 445, and cases there cited; *Reaugh, supra,* at p. 339), namely, whether the evidence offered in support of plaintiff's case could justify a judgment for plaintiff. (Cf. *Ringgold* v. *Haven* (1850) 1 Cal. 108, 114, 116; *Carson* v. *Facilities Development Co., supra,* at p. 838.) █ On appeal we are required to evaluate the plaintiff's evidence under the same rules governing the trial court. (*Id.,* at pp. 838-839.) The evidence most favorable to the plaintiff must be accepted as true unless it is inherently incredible (*Nicholas* v. *Jacobson* (1931) 113 Cal.App. 382, 387-388 [298 P. 505]), and conflicts must be resolved and reasonable inferences drawn in the plaintiff's favor. (*Estate of Arnold* (1905) 147 Cal. 583, 586 [82 P. 252]; *Carson, supra,* 36 Cal.3d at pp. 838-839.)

█ When a nonsuit is based on the plaintiff's opening statement, we assume plaintiff can prove all the favorable facts alleged. (Cf. *Moffitt* v. *Ford Motor Co.* (1931) 117 Cal.App. 247, 250 [3 P.2d 605]; *Smith* v. *Roach* (1975) 53 Cal.App.3d 893, 897-898 [126 Cal.Rptr. 29], and cases there cited.) The court may consider as part of the opening statement exhibits that would probably become evidence at trial. (*John Norton Farms, Inc.* v. *Todagco* (1981) 124 Cal.App.3d 149, 162-163 [177 Cal.Rptr. 215].) A nonsuit on the opening statement is proper only when the court concludes that there will be no evidence which would support a judgment in favor of the plaintiff. (*Willis* v. *Gordon* (1978) 20 Cal.3d 629, 633 [143 Cal.Rptr. 723, 574 P.2d 794]; *John Norton Farms, Inc.* v. *Todagco, supra,* 124 Cal.App.3d 149, 160, and cases there cited.)

█ The grounds for the nonsuit motion should be clearly specified to give the plaintiff an opportunity to cure any defects. (*People* v. *Banvard*

---

[1]The statute provided in pertinent part when this motion was granted in August 1981 (Stats. 1980, ch. 187, § 1, p. 409): "(a) After the plaintiff has completed his opening statement, or the presentation of his evidence in a trial by jury, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a judgment of nonsuit."

(1865) 27 Cal. 470, 474; *Daley* v. *Russ* (1890) 86 Cal. 114, 117 [24 P. 867]; *Timmsen* v. *Forest E. Olson, Inc.* (1970) 6 Cal.App.3d 860, 868 [86 Cal.Rptr. 359].) The plaintiff must be given an opportunity to present all the facts he expects to prove before a nonsuit is proper. (*Paul* v. *Layne & Bowler Corp.* (1937) 9 Cal.2d 561, 566 [71 P.2d 817]; *Huang* v. *Garner* (1984) 157 Cal.App.3d 404, 416-418 [203 Cal.Rptr. 800], and cases there cited.) On appeal we will not consider any ground for the nonsuit not advanced in the trial court, except one which identifies an incurable defect. (*Lawless* v. *Calaway* (1944) 24 Cal.2d 81, 92-94 [147 P.2d 604].)

B. *The Opening Statement*

Plaintiffs' opening statement proffered the following facts. Robert Moyes was employed by the TerraCom Division of Conic as its manager in 1970; his title was later changed to president. He also became a member of Conic's Board of Directors. TerraCom was an electronics manufacturer with approximately 100 employees which sought to develop a commercial digital microwave radio.

Moyes' termination was accompanied by a handwritten agreement of March 29, 1979, and a typed agreement of May 4, 1979, the latter of which stated:

"1. You have resigned as President of the Terracom Division and as a Director of Conic Corporation, effective at the close of business March 29, 1979, and you hereby resign as an employee as of the close of business May 11, 1979.

"2. Your salary and fringe benefits will continue through September 3, 1979 and, if you are then unemployed, salary and fringes will continue thereafter until you become employed but not beyond March 29, 1980. Your existing deferred compensation arrangements will continue unaffected, but no such arrangements shall be made with respect to any salary which may be paid to you for any part of calendar 1980.

"3. You will receive a bonus for fiscal year 1979, as though you were still employed, and whatever vacation pay may be accrued as of May 11, 1979.

"4. Pursuant to the forfeiture provisions of Article VII of Loral's 1976 Stock Option Plan, you hereby resell all shares of Loral common stock obtained on the exercise of special options under the 1976 Stock Option Plan, (except for the 600 shares as to which restrictions have lapsed), amounting to 4400 shares at $5 per share.

"5. All your outstanding unexercised stock options, except for an option granted January 29, 1975, under the Company's 1971 Stock Option Plan as to which 625 option shares remain unexercised, are hereby cancelled.

"6. In addition to the payments already provided for, you will be paid $57,000 in six quarterly installments of $8,000, through September 30, 1980 with a final payment of $9,000 on December 31, 1980.

"7. As a condition for the foregoing payments, you will preserve the confidentiality of all trade secrets and other confidential information of Loral Corporation, Conic Corporation, and its TerraCom Division and you will not now or in the future disrupt, damage, impair or interfere with the business of Conic Corporation, or its TerraCom Division whether by way of interfering with or raiding its employees, disrupting its relationships with customers, agents, representatives or vendors or otherwise. You are not however, restricted from being employed by or engaged in a competing business."

Moyes subsequently became employed by Aydin Corporation. He had been negotiating with Aydin Corporation since February 1979, and received a job offer on March 29, 1979. He accepted and became the president of its microwave division. He then breached the agreement by offering employment with his new employer to two key TerraCom employees, defendants Bruce Jennings and Larry Janssen. Janssen received a job offer from Moyes while he was employed as director of production at TerraCom and he went to work for Aydin soon after Moyes became president. Jennings left his position as executive vice-president of TerraCom, and within a week was interviewed by Moyes at Aydin. On October 1, 1979, Jennings became a marketing manager for Aydin. TerraCom investigated and determined that a large number of their key employees had interviewed with Moyes and been offered jobs at Aydin. Ultimately a large number of people left TerraCom and it spent over $400,000 recruiting new employees. TerraCom's performance on a project to deliver a microwave radio was impaired by the departure of Moyes and other personnel.[2]

C. *The Nonsuit Judgment Must Be Reversed*

 Defendant's major contention in support of the trial court's decision is that the termination agreement is void under Business and Professions

---

[2]Plaintiffs' opening statement also addressed several other topics, such as why Moyes was terminated and what the details of his stock option plans were and what amounts of money were involved in the termination agreement. This information pertains more to Moyes' cross-complaint in the action than the nonsuit motion regarding plaintiffs' complaint, so its elaboration is unnecessary.

Code section 16600: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." California courts have apparently not addressed the application of this statute to a former employee's agreement not to disrupt, damage, impair or interfere with his former employer by "raiding" its work-staff, in other words, a noninterference agreement.

Defendant's contention requires that we consider this statute and this contract in relationship to the tort law of the marketplace, which would otherwise regulate Moyes' conduct. ■ Generally the law of unfair competition prohibits former employees from disclosing or misusing an employer's trade secrets and confidential information—even in the absence of contractual restrictions. (*Empire Steam Laundry* v. *Lozier* (1913) 165 Cal. 95, 99 [130 P. 1180].) Moreover, an agreement between employer and employee defining a trade secret may not be decisive in determining whether the court will so regard it. (*State Farm Mut. etc. Ins. Co.* v. *Dempster* (1959) 174 Cal.App.2d 418, 426 [344 P.2d 821].) The misuse of trade secrets may include solicitation of an employer's customers when confidential information is employed. (*Empire Steam Laundry, supra,* at p. 102.)

Cases suggest that when permissible solicitation of an employer's customers is at issue, a contract may prohibit more than the law of the marketplace otherwise would. (See *Continental Car-Na-Var Corp.* v. *Moseley* (1944) 24 Cal.2d 104, 111 [148 P.2d 9]; Rest.2d Agency, § 396, p. 223.)[3] *Aetna Bldg. Maintenance Co.* v. *West* (1952) 39 Cal.2d 198, 203 [246 P.2d 11], states: "In the absence of an enforceable contract containing negative covenants to the contrary, equity will not enjoin a former employee from soliciting business from his former employer's customers, provided his competition is fairly and legally conducted." Thus, contractual restrictions may have more impact in a nonsolicitation case than a nondisclosure case.

The impact of Business and Professions Code section 16600 on nondisclosure, nonsolicitation and noncompetition promises has already been determined. ■ The basic rule in this state is that contracts precluding a former employee from obtaining new employment with a competitor are

---

[3]The Restatement Second of Agency, section 396, provides in pertinent part: "*Unless otherwise agreed,* after the termination of the agency, the agent: [¶] (a) has no duty not to compete with the principal; [¶] (b) has a duty to the principal not to use or disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty. The agent is entitled to use general information concerning the method of business of the principal and the names of the customers retained in his memory, if not acquired in violation of his duty as agent; . . ." (Italics added.)

invalid under section 16600. "This section invalidates provisions in employment contracts prohibiting an employee from working for a competitor after completion of his employment or imposing a penalty if he does so (*Chamberlain* v. *Augustine*, 172 Cal. 285, 288 . . .; *Morris* v. *Harris*, 127 Cal.App.2d 476, 478 . . .), unless they are necessary to protect the employer's trade secrets . . . ." (*Muggill* v. *Reuben H. Donnelley Corp.* (1965) 62 Cal.2d 239, 242 [42 Cal.Rptr. 107, 398 P.2d 147].) As *Muggill* indicates, reasonably limited restrictions which tend more to promote than restrain trade and business do not violate the statute. (*Great Western etc.* v. *J. A. Wathen D. Co.* (1937) 10 Cal.2d 442, 446, 448-449 [74 P.2d 745]; *Keating* v. *Preston* (1940) 42 Cal.App.2d 110, 123 [108 P.2d 479]; *Centeno* v. *Roseville Community Hospital* (1979) 107 Cal.App.3d 62, 69-70, fn. 2 [167 Cal.Rptr. 183]; cf. *Grogan* v. *Chaffee* (1909) 156 Cal. 611, 614 [105 P. 745].) Section 16600 does not invalidate an employee's agreement not to disclose his former employer's confidential customer lists or other trade secrets or not to solicit those customers. (*Gordon* v. *Landau* (1958) 49 Cal.2d 690, 694 [321 P.2d 456], and cases there cited; see Annot., Statutes Prohibiting Restraint on Profession, Trade, or Business as Applicable to Restrictions in Employment or Agency Contracts, 3 A.L.R.2d 522.) Thus, the statute invalidates an agreement penalizing a former employee for obtaining employment with a competitor, but does not necessarily affect an agreement delimiting how he can compete. ■■■ Our question then is whether a noninterference agreement not to solicit former coworkers to leave the employer is more like a noncompetition agreement which is invalid, or a nondisclosure or nonsolicitation agreement which may be valid.

Defendant contends there is nothing generally illegal about a competitor soliciting another's employees not under contract. We note that the law of unfair competition has struggled with the recurrent problem of when solicitation of another's employees gives rise to tort liability. (*Bancroft-Whitney Co.* v. *Glen* (1966) 64 Cal.2d 327, 352-353 [49 Cal.Rptr. 825, 411 P.2d 921, 24 A.L.R.3d 795]; *Diodes, Inc.* v. *Franzen* (1968) 260 Cal.App.2d 244, 255 [67 Cal.Rptr. 19]; *Orkin Exterminating Co., Inc.* v. *Martin Co.* (1978) 240 Ga. 662 [242 S.E.2d 135, 138-139]; *Motorola, Inc.* v. *Fairchild Camera and Instrument Corp.* (D. Ariz. 1973) 366 F.Supp. 1173, 1180-1181, and cases there cited; *Maryland Meals, Inc.* v. *Metzner* (1978) 282 Md. 31 [382 A.2d 564, 568-570]; *Electrolux Corp.* v. *Lawson* (Colo.App. 1982) 654 P.2d 340, 341-342; Annot., Liability for Inducing Employee Not Engaged for Definite Term To Move To Competitor, 24 A.L.R.3d 821.) As stated in comment e to section 393 of the Restatement Second of Agency, regarding what an employee can do in preparation for competition with his employer: "The limits of proper conduct with reference to securing the services of fellow employees are not well marked. An employee is subject to liability if, before or after leaving the employment, he causes fellow

employees to break their contracts with the employer. On the other hand, it is normally permissible for employees of a firm, or for some of its partners, to agree among themselves, while still employed, that they will engage in competition with the firm at the end of the period specified in their employment contracts. However, a court may find that it is a breach of duty for a number of the key officers or employees to agree to leave their employment simultaneously and without giving the employer an opportunity to hire and train replacements."[4] None of these cited cases involved an agreement not to interfere with former coworkers, however.

Defendant quotes from *Hollingsworth Solderless Terminal Co.* v. *Turley* (9th Cir. 1980) 622 F.2d 1324, 1338: "We think the applicable California law is that 'the employer will be able to restrain by contract only that conduct of the former employee that would have been subject to judicial restraint under the law of unfair competition, absent the contract.' [Citation.]" The court reversed a summary judgment in favor of the employee which found restrictive covenants invalid under section 16600. The court suggested that covenants restricting a former employee were valid under the statute but only insofar as they prohibited use of trade secrets or other unfair competition. (*Id.,* at pp. 1339-1340.)

The facts of *Hollingsworth Solderless Terminal Co., supra,* 622 F.2d 1324, must be considered to understand this holding. A former employer charged a former employee with, among other things, violating restrictive covenants whereby the employee promised nondisclosure of customer lists and descriptions, return of the lists post-termination, and nonsolicitation of the former employer's customers for one year. (*Id.,* at p. 1327, 1328, fn. 2.) There were no noninterference covenants. The former employee was not charged with soliciting former coworkers, although his new employer, a competitor, was so charged. (*Id.,* at pp. 1328, 1336-1338.) The court suggested that the competitor had violated the law of unfair competition if there were more than mere solicitation of employees without a contract, such as misappropriation of trade secrets. (*Id.,* at pp. 1337-1338.) The ruling concerning interference with employees was not concerned with section 16600.

---

[4]It is problematical what sort of conduct will be regarded as tortious interference with contractual relations, because there is a privilege of competition. (Cf. *A-Mark Coin Co.* v. *General Mills, Inc.* (1983) 148 Cal.App.3d 312, 323-324 [195 Cal.Rptr. 859]; Rest.2d Torts, § 768, p. 39.)

Section 768 of the Restatement Second of Torts states in pertinent part: "(1) One who intentionally causes a third person . . . not to continue an existing contract terminable at will does not interfere improperly with the other's relation if [¶] (a) the relation concerns a matter involved in the competition between the actor and the other and [¶] (b) the actor does not employ wrongful means and [¶] (c) his action does not create or continue an unlawful restraint of trade and [¶] (d) his purpose is at least in part to advance his interest in competing with the other. . . ."

The court applied the statute to promises of nonsolicitation and nondisclosure as the California state courts have done, and the case goes no further than that. It does not apply the statute to any noninterference promises.

We have discovered two cases, both from the State of Georgia, which upheld such noninterference promises as not void in restraint of trade. In *Lane Co.* v. *Taylor* (1985) 174 Ga.App. 356 [330 S.E.2d 112], an employer sued its former employee for, among other things, violating an agreement which prohibited her for one year post-termination from hiring employees or otherwise causing them to work for another employer. (*Id.*, at p. 114.) The agreement also provided that she would neither solicit the former employer's customers nor disclose confidential information. The court held the provision barring solicitation of customers void because not limited in area, but the limited restriction on "pirating" of employees was reasonable and "needed to protect legitimate business interests." (*Id.*, at p. 117.)

In *Lane Co.*, the court observed that the Georgia Supreme Court announced in *Orkin Exterminating Co., Inc.* v. *Martin Co., supra,* 240 Ga. 662 [242 S.E.2d 135, 138-139]: "Overly-restrictive covenants in employment contracts or other similar considerations which place a restraint upon the free movement of employees in the marketplace as opportunity, experience and competition permits is [*sic*] contrary to this court's view of fair competition." *Orkin Exterminating Co.* did not involve any written restrictive covenants, however; it involved the tort of interference with contractual relations and the privilege of fair competition described in section 768 of the Restatement Second of Torts. *Lane Co.* considered the agreement before it not overly restrictive.

*Lane Co.* also cited *Harrison* v. *Sarah Coventry, Inc.* (1971) 228 Ga. 169 [184 S.E.2d 448], which was not mentioned in *Orkin Exterminating Co.* In *Harrison*, the former employees had agreed that during employment and for two years post-termination they would not disclose the identity of the employer's employees nor attempt to induce them to leave the company. (*Id.*, at p. 449.) The former employees were charged with violating the agreement. The court upheld these provisions as not in restraint of trade, distinguishing cases involving noncompetition agreements without territorial limitations. There was no restraint of trade because the defendants were free to work for a competitor, so long as they did not interfere with their former employer's contractual relationships nor divulge the names of former coworkers. (*Id.*, at p. 449.)

We agree with the reasoning of the Georgia courts. The potential impact on trade must be considered before invalidating a noninterference agreement. A contract must be construed to be lawful if possible. (Civ. Code,

§§ 1643, 3541.) Defendant is restrained from disrupting, damaging, impairing or interfering with his former employer by raiding Conic employees under his termination agreement. This does not appear to be any more of a significant restraint on his engaging in his profession, trade or business than a restraint on solicitation of customers or on disclosure of confidential information. "[T]he May 4th agreement expressly permits Moyes to be employed by or engage in a competing business." (*Aydin Corp.* v. *Loral Corp.* (9th Cir. 1983) 718 F.2d 897, 900.)[5]

Responding to our invitation at oral argument, Moyes seeks to distinguish *Lane Co.* and implicitly *Harrison* on the basis, among others, they involved noninterference agreements of limited duration. He contends restrictive covenants of unlimited duration are more onerous and tend more to restrain trade. ■ We note as a general proposition the duration alone of a restrictive agreement is not determinative of its enforceability. (Annot., Enforceability of Restrictive Covenant, Ancillary to Employment Contract, as Affected by Duration of Restriction, 41 A.L.R.2d 15, §§ 4(b), 5(b), 127, pp. 33, 41-42, 215-218.) Rather, enforceability depends upon its reasonableness, evaluated in terms of the employer, the employee, and the public. (*Id.*, § 4(c), p. 34.) We also observe the Legislature has allowed business sellers to promise noncompetition to their buyers without time limitation other than for the period "so long as the buyer, or any person deriving title to the goodwill or shares from him, carries on a like business therein." (Bus. & Prof. Code, § 16601.) Courts faced with noncompetition contracts without this limitation have upheld the contracts by reading the statutory limit into them. (*Brown* v. *Kling* (1894) 101 Cal. 295, 302 [35 P. 995], questioned on other grounds in *Swenson* v. *File* (1970) 3 Cal.3d 389, 394 [90 Cal.Rptr. 580, 475 P.2d 852]; *Gregory* v. *Spieker* (1895) 110 Cal. 150, 153-154 [42 P. 576]; *Martinez* v. *Martinez* (1953) 41 Cal.2d 704, 706 [263 P.2d 617].) We need not and do not decide whether this noninterference contract would unreasonably and illegally restrain trade if applied to other conduct at another time. ■ We determine only that there is no statutory problem in applying it to Moyes' conduct within a year of its execution.

This restriction only slightly affects Conic employees. They are not hampered from seeking employment with Aydin nor from contacting Moyes. All they lose is the option of being contacted by him first. It does not restrain them from being employed by Aydin, contrary to defendant's argument. ■ Equity will not enjoin a former employee from receiving and consid-

---

[5]This federal circuit court decision affirmed an unpublished district court opinion filed October 8, 1981. These federal decisions determined this very agreement not to be a per se violation of the federal antitrust law, the Sherman Act (15 U.S.C., § 1). (*Aydin Corp., supra,* 718 F.2d 897, 899-901.) They have persuaded defendant on appeal to abandon his argument to the contrary which prevailed in the trial court below.

ering applications from employees of his former employer, even though the circumstances be such that he should be enjoined from soliciting their applications. (Cf., *Aetna Bldg. Maintenance Co.* v. *West, supra,* 39 Cal.2d 198 at p. 204.)

 The restriction presumably was sought by plaintiffs in order to maintain a stable work force and enable the employer to remain in business. This restriction has the apparent impact of limiting Moyes' business practices in a small way in order to promote Conic's business. This noninterference agreement has no overall negative impact on trade or business. We hold that this contract, as construed, is not void on its face under Business and Professions Code section 16600.[6]

We also reject defendant's other contention in support of the decision, that plaintiffs did not allege full performance of their part of the contract. (Civ. Code, §§ 1439, 3392; Code Civ. Proc., § 457.)

Under the termination agreement, plaintiffs' obligations to make certain payments were conditioned upon Moyes' observation of his own promises. According to the opening statement, he almost immediately violated his promise not to raid Conic's employees by offering Larry Janssen a job at Aydin.

 The requirement of performance may be excused by the other party's breach. (*Beverage* v. *Canton Placer Mining Co.* (1955) 43 Cal.2d 769, 777 [278 P.2d 694]; Civ. Code §§ 1440, 1511.) As the trial court observed, the opening statement implied that plaintiffs' performance of the termination agreement was excused, although this was not stated in so many words.

The judgment of nonsuit is reversed.

D. *Consequences of Reversal**

. . . . . . . . . . . . . . . . . . . . . . . .

## Conclusion

We reverse the judgment on the complaint insofar as a nonsuit was granted on the first cause of action and as a consequence, we vacate the judgment

---

[6]This approach does not require us to address plaintiff's interesting argument that the abilities and salaries of its employees were trade secrets. (Cf. *Bancroft-Whitney Co.* v. *Glen, supra,* 64 Cal.2d 327, 350-352.) This argument loses some force in light of plaintiff's dismissal of their fourth cause of action alleging misuse of trade secrets.

*See footnote, *ante,* page 268.

on the cross-complaint, insofar as cross-complainant was granted restitution of those shares of stock described in paragraph 4 of the termination agreement; and remand for further proceedings as described above. We otherwise affirm judgment on the cross-complaint. The parties will bear their own costs on appeal.

Brauer, J., and Premo, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.