**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DM RESIDENTIAL FUND II, LLC, *Plaintiff-Appellant*, | No. 13-56309 |
| v. | D.C. No. 2:12-cv-02707-MWF-FMO |
| FIRST TENNESSEE BANK NATIONAL ASSOCIATION, *Defendant-Appellee*. | OPINION |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted
October 22, 2015—Pasadena, California

Filed December 30, 2015

Before: Alex Kozinski, Sandra S. Ikuta,
and John B. Owens, Circuit Judges.

Opinion by Judge Ikuta;
Dissent by Judge Kozinski

## SUMMARY[*]

### Rescission

The panel affirmed the district court's grant of summary judgment in favor of First Tennessee Bank National Association (FTB) in an action brought by DM Residential Fund II, LLC, seeking to rescind its purchase of real property on the basis that the seller failed to disclose a defect.

FTB initiated a nonjudicial foreclosure on residential real property and sold the property at a foreclosure sale to DM. The property lacked a utilities easement to provide electrical services to the new home and also lacked a certificate of occupancy. DM discovered the utilities easement issue shortly after buying the property, but did not bring this diversity action until two years later, seeking to rescind the purchase.

The panel held that there was a genuine issue of material fact as to whether DM could have discovered the defect prior to the foreclosure. The panel also held nevertheless that the district court did not err in concluding on summary judgment that DM was not entitled to the equitable remedy of rescission because a party seeking rescission must do so "promptly upon discovering the facts upon discovering the facts which entitle him to rescind." Cal. Civ. Code § 1691. The panel also held that there was no genuine issue of material fact that DM was put on inquiry of wrongdoing at the time it discovered the lack of electricity at the residence shortly after the purchase,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

and therefore it was deemed to know all facts that could be discovered from a reasonable investigation. The panel further held that DM, instead of investigating and pursuing its claims, took actions inconsistent with unwinding the contract, and by taking those actions and waiting two years before suing FTB, DM affirmed the transaction and lost its right to rescind.

The panel concluded that FTB was entitled to summary judgment because there was no genuine issue of material fact that DM's two-year delay in bringing suit deprived it of the equitable remedy of rescission under California law.

Dissenting, Judge Kozinski would hold that DM raised a genuine issue of material fact regarding whether it was wronged by FTB, and FTB was not entitled to prevail on its defenses and not entitled to summary judgment. He would certify the issue for consideration by the California Supreme Court.

**COUNSEL**

Harris L. Cohen, (argued) Harris L. Cohen, A Professional Corporation, Encino, California; Elkanah J. Burns, Alan D. Wilner, A Professional Corporation, Burbank, California, for Plaintiff-Appellant.

Keith A. Attlesey (argued) and Suzanne S. Storm, Attlesey Storm, LLP, Tustin, California, for Defendant-Appellee.

**OPINION**

IKUTA, Circuit Judge:

DM Residential Fund II, LLC, (DM) appeals the district court's grant of summary judgment in favor of First Tennessee Bank National Association (FTB). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

FTB initiated a nonjudicial foreclosure on residential real property and sold the property at a foreclosure sale to DM. The property lacked a utilities easement needed to provide electrical service to the new home that had been constructed on the property and also lacked a certificate of occupancy. DM discovered the utilities easement issue shortly after buying the property and brought this diversity action two years later, seeking to rescind the transaction on the basis of FTB's failure to disclose the defect.

A jury could have reasonably concluded that DM could not have discovered the utility easement issue prior to the foreclosure sale based on evidence in the record that: (1) DM's pre-foreclosure due diligence exceeded industry

standards; and (2) it was reasonable for DM not to seek the certificate of occupancy for this property because construction of the residence appeared to be completed in 2007 and the City of Whittier did not require certificates of occupancy for residences built before 2010. Therefore, there was a genuine issue of material fact as to whether DM could have discovered the defect prior to the foreclosure sale, which is the relevant inquiry under *Karoutas v. HomeFed Bank*, 232 Cal. App. 3d 767, 771 (1991).

Nevertheless, the district court did not err in concluding on summary judgment that DM is not entitled to the equitable remedy of rescission. A party seeking rescission must do so "promptly upon discovering the facts which entitle him to rescind." Cal. Civ. Code § 1691.[1] It is undisputed that DM paid over $624,000 for a residence and shortly thereafter discovered that it did not have electricity and could not obtain it (absent the purchase of an additional easement). Under these circumstances, a reasonable person would be put on inquiry as to whether there had been some wrongdoing in the sale of the residence, at which point a duty to investigate the wrongdoing arises. *See Bancroft v. Woodward*, 183 Cal. 99, 108 (1920); *see also Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1112 (1988) (granting summary judgment). FTB's status as a foreclosing lender does not alter this conclusion, because a foreclosing lender has the same duties of disclosure regarding the property as any other seller. *See Karoutas*, 232 Cal. App. 3d at 771. There is thus no genuine issue of material fact that DM was put on inquiry of wrongdoing at the time it

---

[1] Contrary to the dissent's argument, Dis. op. at 7–8, the phrase "promptly upon discovering the facts which entitled him to rescind" in section 1691 of the California Civil Code remained unchanged when the statute was amended in 1961.

discovered the lack of electricity, and therefore is deemed to know all facts that could be discovered from a reasonable investigation. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808–09 (2005). FTB presented evidence that when DM contacted Cynthia Huerta, she informed DM that FTB knew of the material defect at the time of the foreclosure sale. As DM presented no evidence that would allow a trier of fact to conclude that it would not have been able to discover the facts supporting its right to rescind at the time it discovered the defect in the residence, there is no question of material fact on this issue. *Id.*

Instead of investigating and pursuing its claims, DM took actions inconsistent with unwinding the contract, including encumbering the property, building improvements, and attempting to sell it. By taking those actions and waiting two years before suing FTB, DM affirmed the transaction, and its "right to rescind it is gone." *Bancroft*, 183 Cal. at 111; *see also Neet v. Holmes*, 25 Cal. 2d 447, 458 (1944). Because there is no genuine issue of material fact as to whether DM's two-year delay deprived it of the equitable remedy of rescission, FTB is entitled to summary judgment on that issue.[2]

**AFFIRMED.**

---

[2] DM does not pursue its theories for recovery of damages on appeal, and so we do not address them here.

KOZINSKI, Circuit Judge, dissenting:

I agree with the majority that DM was entitled to go to the jury with its claim that it couldn't have discovered the hidden defect prior to buying the property.  Maj. at 4–5.  Moreover, as the majority correctly notes, FTB was bound to disclose the hidden defect of which it was aware at the time of the sale "because a foreclosing lender has the same duties of disclosure regarding the property as any other seller."  *Id.* at 5 (citing *Karoutas* v. *HomeFed Bank*, 232 Cal. App. 3d 767, 771 (1991)).  Nor is there any doubt that DM brought the lawsuit well within both the three-year statute of limitations for its fraud claims, *see* Cal. Civ. Proc. Code § 338(d), and the four-year statute of limitations for its rescission claim, *see id.* § 337(3).  DM thus was entitled to sue FTB, unless it relinquished those rights.  The majority concludes it did, but does so by misreading California law and ignoring key facts.

**1.**  The majority relies on section 1691 of the California Civil Code, which it construes as depriving DM of its claim for rescission because it failed to investigate and notify FTB of that claim in a timely fashion.  Maj. at 5.  But section 1691 only requires prompt notice after a party is "aware of his right to rescind," Cal. Civil Code § 1691; it imposes no duty to investigate on the wronged party.

The majority goes astray by relying on a case from the era of flivvers and flappers that interpreted an earlier version of section 1691.  Maj. at 5 (citing *Bancroft* v. *Woodward*, 183 Cal. 99, 108 (1920)).  At that time, section 1691 required the party seeking rescission to "use . . . reasonable diligence," Cal. Civil Code § 1691 (1915), but in 1961, California lawmakers removed the "reasonable diligence" requirement. The current version of the statute contains no diligence

requirement and says nothing at all about the period before the rescinding party discovers its ground for rescinding. *See* Cal. Civil Code § 1691 (2015). Thus, "reasonable diligence or promptness on the part of the party seeking rescission is no longer a prerequisite for the remedy." *Wilke* v. *Coinway, Inc.*, 257 Cal. App. 2d 126, 140 (1967). The majority is applying California law that was repealed when *Pat* Brown was governor.

The majority also cites *Jolly* v. *Eli Lilly & Co.*, 44 Cal. 3d 1103, 1112 (1988), and *Fox* v. *Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808–09 (2005), but those are statute of limitations cases. *See* Maj. at 5. The statute of limitations hadn't run when DM brought suit, so those cases are irrelevant to the question presented to us.

**2.** Even assuming that lack of diligence could be fatal to DM, where's the lack of diligence here? DM bought the property from FTB at a foreclosure sale and soon discovered the defect. Had this been an ordinary sale, DM would have had reason to suspect the seller was aware of the defect. A property owner generally occupies and improves the property, and is likely to be familiar with its physical condition. But this was a foreclosure sale. The seller bank didn't occupy the property or have any other physical dealings with it; the property was an asset on the bank's books securing a defaulted loan. And, as the majority recognizes, maj. at 4–5, the defect was not one that a reasonable investigation would have turned up; it was only when DM tried to develop the property that it discovered the problem.

The prior owner, Huerta, would likely have known about the defect, but she would have had no reason to disclose it to the bank. I don't understand why DM had a duty to track

down Huerta and ask her whether she told the bank about the hidden defect.    Absent some evidence that such a communication between Huerta and the bank had taken place—of which there was none here—a reasonable buyer wouldn't have bothered looking for Huerta and asking her what she'd told the bank.

But there's an even wider gap in the majority's reasoning: Assuming DM did have a duty to find Huerta and interrogate her about whether she disclosed the defect to the bank, there's no proof DM could have done so.  We know that Huerta was reachable on December 29, 2011, because DM's agents talked to her around that time.  But the record shows nothing about her whereabouts between February 4, 2010, the date of the sale, and December 29, 2011, when she talked to DM. Was she easily found?  Was she hospitalized in a coma?  Was she in Zanzibar hunting snark?  The record does not say.

The majority errs by assuming that Huerta was reachable by DM in 2010 because she talked to its agents in December 2011.  Maj. at 6.  We have no evidence that this was the case, and it is *FTB*'s duty, as the party moving for summary judgment, to fill any such gaps in the record.  *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

FTB ultimately leaves too much to speculation.  First, it doesn't explain why DM would have had reason to chase down Huerta and ask her whether she told the bank about the hidden defect.  Nothing in the relationship of defaulting borrower and foreclosing bank naturally suggests that she would have done so.  And, second, we are left to speculate about where Huerta was all this time and whether DM could have gotten a hold of her.  All of these are *facts*—facts that

are necessary for FTB to prevail on summary judgment, and facts that are absent from this record.

**3.**  The majority disregards the fact that DM also sought damages on theories of negligent and intentional misrepresentation.  Section 1691 certainly doesn't apply to those claims and, as noted, they aren't barred by the statute of limitations.  The district court had no basis for concluding that DM waived those claims because a party doesn't waive its right to sue for fraud just by engaging in conduct allegedly inconsistent with an intent to sue after discovering the misrepresentation.  *See Smith* v. *Roach*, 53 Cal. App. 3d 893, 898–99 (1975).  Plaintiffs in *Smith* rented out units in a building they owned after finding out they relied on a misrepresentation in purchasing it.  *Id.* at 899.  The *Smith* court refused to find waiver because "a plaintiff waives his right to seek damages for fraud only if, after he discovers the fraud, he makes a new agreement or engagement *with the other party to the original contract*" that results in an "adjustment of the plaintiff's rights under the original contract."  *Id.* at 898–99 (internal quotation marks omitted).  Here, DM did not discover the fraud until 2012, and at no point entered into any subsequent agreement with FTB.

\*      \*      \*

DM raised a genuine issue of material fact regarding whether it was wronged by FTB.  FTB was not entitled to prevail on its defenses, and certainly not on summary judgment.  I can't imagine the result would be the same if this case were decided by the California courts.  At the very least, the matter is highly debatable, and we should certify it for consideration by the California Supreme Court.  *See* Cal. R. Ct. 8.548(a).