Filed 4/28/26  Burnside v. 1545 Broadway Homeowners Assn. CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| REBECCA BURNSIDE,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>1545 BROADWAY HOMEOWNERS' ASSOCIATION, et al.<br><br>　　　　Defendants and Respondents. | A171368, A174209<br><br>(City & County of San Francisco Super. Ct. No. CGC-22598325) |

Appellant Rebecca Burnside sued her condominium homeowners association and its property manager seeking damages from toxic mold allegedly caused by water penetrating into her unit, other units, and common areas.  The complaint alleged contract and negligence claims based on defendants' breach of the CC&Rs and their maintenance obligations.  Defendants filed a cross-complaint against Burnside.

The case proceeded to a 25-day jury trial, at the conclusion of which the jury returned with special verdicts that found against Burnside and in favor of defendants, including verdicts that:  (1) Burnside did not do what the CC&Rs required her to do; (2) the Association was not negligent; and (3) the property manager was negligent, but its negligence was not a substantial factor in causing Burnside damage.  The jury also found for defendants on the cross-complaint.  Judgment was entered against Burnside, and later

judgments awarded the Association costs and attorney fees against Burnside.

Burnside appeals from the judgment on the complaint and cross-complaint, asserting claims of error by the trial court in its rulings on motions in limine and other rulings in the course of trial. Burnside also appeals from the cost and attorney fee judgments, fundamentally arguing that they must be set aside because the underlying judgment must be set aside. We conclude that Burnside's arguments have no merit, and we affirm the judgments in both appeals.

## BACKGROUND

### The General Setting

1545 Broadway Street, San Francisco, is a condominium property consisting of 24 residential units, one commercial unit, and related common areas. The property is managed by 1545 Broadway Homeowners' Association (the Association), a California common interest development association formed pursuant to the Davis-Stirling Common Interest Development Act (Civ. Code, § 4175 et seq.) (Davis-Stirling Act). Its governing documents include the covenants, conditions, and restrictions (CC&Rs). The Bohan Company, Inc. (Bohan), a corporation, managed the property on behalf of the Association.

In 2010, Burnside, who is an attorney, purchased unit 305 in the property, which she occupied as her residence and from which she operates her law practice.

### The Proceedings Below

#### *The Pleadings*

In February 2022, Burnside filed a complaint against the Association and Bohan (when referred to collectively, defendants) alleging claims for: (1) breach of contract, (2) negligence, and (3) preliminary and permanent

injunction. The essence of the complaint was that in 2020 Burnside reported water leaks in her guest bedroom, to which defendants made only "minor cosmetic repairs," and that subsequent leaks occurred that defendants failed to address in breach of their duties under the CC&Rs. The complaint alleged that this caused Burnside both property damage and personal injury because the water intrusion led to mold growth that caused her to develop a litany of symptoms "including, but not limited to, eye irritation, headaches, nose bleeds, coughing, heavy chest, asthma, fatigue, nausea, dizziness, sleep disruption, and hair loss."

Defendants filed their answer and also a cross-complaint alleging six causes of action: two claims for breach of governing documents (unauthorized modification of common areas and failure to remediate mold); two claims for declaratory relief; and claims for equitable indemnity and contribution.

In November 2022, both sides demanded a jury trial, with Burnside estimating seven days for trial, defendants five. By the time the case came on for trial, the estimate had apparently escalated to 16 days, though the court indicated it thought that estimate was too high. The court's optimism was misplaced, as the actual trial took substantially longer, 25 days to be precise, this, despite, as Burnside's brief acknowledges, throughout the trial the court chastised—"threatened" is the word she uses—counsel for among other things the pace of trial.

### *The Trial*

The case was originally set for trial in August 2023 but both parties objected, and trial was reset and then against reset pursuant to stipulation for February 20, 2024. Trial in fact began on February 26.

Meanwhile, in mid-February, both parties filed motions in limine, Burnside filing four such motions and defendants 10. The motions were

3

argued at length on February 26, following which the court granted some and denied others. As pertinent to the issues here, the minute order describes the court's rulings on defendants' motions: "Defendant's Motions In Limine #1 and #2 are DENIED, Motions In Limine #3 is GRANTED. Motions In Limine #4 is GRANTED in part and DENIED in part as noted in the court reporter's transcript, Motions In Limine #6 and #7 are GRANTED. Motions In Limine #8 is DENIED. Motions In Limine #5 and #9 are granted limited as to psychiatric injuries. Motions In Limine #10 oral Motions for site inspections as set forth on the record regarding Google Maps 352."

As indicated, the trial began on February 26 and would last, interrupted by continuances and other matters, until April 16 when the jury returned its verdicts. During Burnside's case she put on numerous witnesses, many of whom were experts, including in the areas of mold, remediation, general contracting, condominium maintenance, and several fields of medicine, including psychiatry and forensic psychiatry. Burnside also introduced some 90 exhibits.[1]

The heart of Burnside's lawsuit was that defendants breached the CC&Rs by failing to maintain or repair the roof and were negligent in that failure. Defendants' position was that the moisture and condensation in Burnside's unit was from her internal use of the steam shower and that moisture found in the roof cavities had no causal link to roof leaks—in short, that the mold infestation in Burnside's unit was caused by her own conduct.

Closing arguments concluded on April 15, and at 2:29 that day the bailiff took control of the jury. We do not know how long, if at all, the jury deliberated that day, but it did deliberate for some two hours on April 16 when, at 12:45, it announced it had reached its verdicts, all of which were

---

[1] This was out of the 213 exhibits Burnside had produced to the court.

against Burnside.  They included these three:

> (1)    "3.  Was Rebecca Burnside excused from having to do all, or substantially all, of the significant things that the CC&Rs required her to do?
>
> "_____ Yes    ___X____ No (11).
>
> (2)    "**On Plaintiff's Cause of Action for Negligence against Defendants, the jury answered as follows**:
>
> "1.  Please answer the following:
>
>> "a.  Was 1545 Broadway Homeowners' Association, Inc. negligent?
>>
>> "_____ Yes    ___X____ No (10)
>>
>> "b.  Was the Bohan Company, Inc. negligent?
>>
>> "___X____ Yes  []    _____ No [¶] . . . [¶]
>
> "2.  [¶] . . . [¶]
>
>> "b.  Was the Bohan Company, Inc.'s negligence a substantial factor in causing harm to Rebecca Burnside?
>>
>> "_____ Yes    ___X____ No (11)."

The verdicts were all unanimous: 11 to 0.[2]

The jury also found against Burnside on defendants' cross-complaint, awarding them $27,688.

On May 17, the trial court entered judgment on the verdicts.  Burnside moved for a new trial, which according to Burnside's brief was denied.  On August 29, Burnside filed an appeal from the judgment.  This is appeal no. A171368.

---

[2]    During trial a juror had been excused, and the trial court offered the parties various alternatives.  They stipulated the case could proceed with 11 jurors.

Meanwhile, in July the Association moved for attorney fees and costs pursuant to the Davis-Stirling Act, seeking $845,012.00. Burnside filed opposition, and the Association a reply. The motion came on for hearing in December, and on June 12, 2025, the trial court entered orders awarding the Association $341,508.00 in attorney fees and $474,752.08 in costs.

Judgments on those orders followed and on August 8, Burnside filed an appeal from these judgments. This is appeal no. A174209. We ordered the appeals consolidated.

## DISCUSSION

### Introduction

As noted, Burnside is an attorney, who was represented by counsel throughout the proceedings below. She has chosen to represent herself on the appeals. Doing so, Burnside has filed a brief that, exclusive of exhibits, is 160-pages long, containing 28,935 words. The brief asserts that there are six "issues presented," but only the first three assert a specific claim of error by the trial court, which three read as follows:

"A. Whether motion in limine exclusion of key evidence and expert opinion necessary to prove her case in-chief and defend against the counterclaims constituted reversible error . . . .

"B. Whether the trial court committed reversible error by prohibiting examination of adverse party witnesses in her case-in-chief, per evidence code § 776 . . . .

"C. Whether a new trial is warranted due to exclusion of critical corroborating documents and testimony . . . ."[3] (Capitalization omitted.)

---

[3] The other three issues either assert cumulative error or are generalized and vague, reading as follows:

6

We will discuss the three substantive issues below. But before we do, a few words about Burnside's briefing, which ignores many principles of appellate review, not to mention California Rules of Court. Specifically:

California Rules of Court, rule 8.204(a)(2)(C) provides that an appellant's opening brief shall "[p]rovide a summary of the significant facts . . . ." And the leading California appellate practice guide instructs about this: "Before addressing the legal issues, your brief should accurately and fairly state the critical facts (including the evidence), free of bias; and likewise as to the applicable law. [Citation.] [¶] Misstatements, misrepresentations, and/or material omissions of the relevant facts or law can instantly 'undo' an otherwise effective brief, waiving issues and arguments; it will certainly cast doubt on your credibility, may draw sanctions [citation], and may well cause you to lose the case." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2025) (Eisenberg) ¶ 9:27, italics omitted.) Such summary is lacking here.

Burnside's brief has a section called, "Factual and Procedural Background." The section is 33-pages long, and in it are various "facts" that can only be described as skewed in favor of Burnside, not the jury verdicts below. This is most inappropriate, as it is in disregard of the settled principle of appellate review that the evidence must be viewed most favorable to the

---

"D. Whether the trial court's cumulative evidentiary rulings interfered with appellants constitutional and statutory rights to a fair trial and right to confrontation . . . .
"E. Whether, in the alternative, the evidentiary rulings at minimum constituted an abuse of discretion . . . .
"F. Whether the judgment should be reversed as a matter of law because the steps appellant took in selfhelp discovery were protected activity shielded by absolute immunity under the litigation privilege . . . ." (Capitalization omitted.)

7

prevailing party, and in support of the judgment. (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429; see generally *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [" 'a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact.' . . . A recitation of only defendants' evidence is not the 'demonstration' contemplated under the above rule."].)

But beyond that, and as illustrated in her index, Burnside's "factual" recitation includes facts not even presented at trial. As she describes it, items in "Red= excluded or not presented."[4]

Burnside's opening brief has no statement as to the "standard of review." Cases hold that such omission is by itself sufficient to show that the appeal has no merit. (See *Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465 ["Failure to acknowledge the proper scope of review is a concession of a lack of merit"], citing *James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1021.)[5]

---

[4] A few illustrations of such pro-Burnside facts include these items listed in her index:
"1. HEALTH CONDITIONS EMERGED . . . .
"2. BUILDING HISTORY AND ITS HAZARDOUS ROOF. (RED = EXCLUDED OR NOT PRESENTED) . . . .
"3. 2010–2012: DISCOVERY BY RESPONDENTS . . . .
"4. NUMEROUS LEAK COMPLAINTS STARTED IN 2017. (RED = EXCLUDED OR NOT PRESENTED) . . . . [¶] . . . [¶]
"7. AN ILLEGAL THIRD ROOF LAYER . . . .
"8. ERMI TESTING ALSO REVEALS MOLD PRESENCE IN #305, #306, #205, THE COMMON HALLWAY, AND THE EMERGENCY STAIRWELL . . . ."

[5] While Burnside's opening brief does not contain a standard of review, her reply brief asserts that de novo review is appropriate, on the basis that a ruling that precludes all evidence on a point is equivalent to a non-suit. (See *Garner v. BNSF Railway Co.* (2024) 98 Cal.App.5th 660, 674 [de novo review where grant of motion in limine was "functional equivalent of an order

**Burnside Has Demonstrated No Error in the Rulings on Motions in Limine**

As noted, Burnside's first and most fundamental argument, comprising some 60 pages of her brief, is that the trial court erred in its rulings on four of defendants' motions in limine, in the order Burnside lists them, numbers 3, 6, 4, and 7.

While Burnside's opening brief does not mention our standard of review, that standard is well-settled, stemming from the fundamental rule that we generally apply the abuse of discretion standard of review to any trial court ruling on the admissibility of evidence. (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446–447; *Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.) This includes, for example, rulings whether the evidence was relevant (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281); rulings pertaining to expert testimony (e.g., *Mountain View Police Dept. v. Krepchin* (2024) 106 Cal.App.5th 480, 504; *Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467, 472); and as particularly apt to the trial court's rulings here, whether evidence was properly excluded under Evidence Code section 352, that is, whether the probative value is substantially outweighed by risk of undue consumption of time, danger of undue prejudice, confusion of issues, or of misleading the jury. (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1685.) And such discretionary review applies to rulings on motions in limine. (See *Osborne v. Todd Farm Service* (2016) 247 Cal.App.4th 43, 51; *McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 295–296; *Ceja v. Department of Transp.* (2011) 201 Cal.App.4th 1475, 1480–1481.)

---

granting nonsuit"].) That was not the situation here, where Burnside introduced voluminous evidence, much of which should have been inadmissible as within motions in limine.

9

As to what a showing of abuse of discretion requires, it has been described in terms of a decision that "exceeds the bounds of reason" (*People v. Beames* (2007) 40 Cal.4th 907, 920), or one that is arbitrary, capricious, patently absurd, or even whimsical. (See, e.g., *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 390.) In its observation on the subject in a leading case, our Supreme Court has said that "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.'" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) Or, as that court put it in a more recent definition, "arbitrary or irrational." (*In re White* (2020) 9 Cal.5th 455, 470.) These adjectives hardly describe the trial court's rulings here.

Against that background, we analyze Burnside's arguments, beginning with motion in limine (MIL) number 3.

### *MIL 3*

MIL 3 sought to exclude 36 Google Earth images of the property, asserting three separate grounds: (1) lack of authentication (Evid. Code, § 1401); (2) relevancy (Evid. Code, § 350); and (3) undue prejudice, confusion, and misleading the jury (Evid. Code, § 352). In the course of argument on this MIL, it was pointed out that the Google images could include images that were 10 to 20 years old. The trial court granted the MIL, saying, "352."[6] Burnside has shown no abuse of discretion on that or any other basis.

As to "352," suffice to say that images years and years before those in issue here would obviously cause an unnecessary amount of time to explain,

---

[6] Immediately prior to the court's ruling, defendants' counsel acknowledged that "Granting this motion in limine does not preclude plaintiff from offering pictures that she took or maybe one or her experts took of the roof and alleged ponding on the roof. It just prohibits them from bringing in

not to mention could cause confusion. It hardly needs saying that 20-year-old images were not relevant to the issues here. And as to the lack of authentication, Burnside obviously does not contest that "[a]uthentication of a writing is required before it may be received in evidence." (Evid. Code, § 1401, subd. (a).) Despite that, Burnside does not even attempt to show such authentication, which was her burden. (*People v. Beckley* (2010) 185 Cal.App.4th 509, 514–515.)

The Google images purportedly showing water conditions on the roof at different times had no foundation to support the depth of that water, as one can see in some of the photographs in Burnside's brief. In short, there is no reliable indication of what exactly those Google images depict, no reliable way in determining if the images showed water on the roof, dirt, discoloration, or something else entirely. Also, the images fail to show how much time passed from when it rained to when the image was captured.

Burnside argues that Evidence Code sections 1552 and 1553 are the bases of how Google Earth images are routinely admitted at trial, but fails to develop the argument. California Rules of Court, rule 8.204(a)(1)(B) states that each point in a brief must be supported by argument and, if possible, citation of authority; and, if not, it can be considered waived. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784—785 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].) In any event, our Supreme Court has held that "the presumptions in section 1552 and 1553 do not in themselves fully supply the necessary foundation" and

_____

these Google Earth images from 10, 20 years back that depict the ponding issue." And numerous pictures were in fact introduced.

11

"[t]he secondary evidence rule does not 'excuse[ ] compliance with Section 1401 (authentication).' " (*People v. Goldsmith* (2014) 59 Cal.4th 258, 271.)

Burnside cites to a number of federal and out-of-state cases that she claims support the proposition that "Google Earth images are routinely admitted at trial as relevant, probative evidence." But these cases are not binding on us, as we ourselves have noted in *People v. Mackey* (2015) 233 Cal.App.4th 32, 87: "we disagree with the Ninth Circuit's test and are not bound to follow it, even on constitutional questions." Moreover, Burnside fails to demonstrate how the cases were interpreting rules or statutes sufficiently similar to sections of our Evidence Code.[7]

### *MIL 6*

MIL 6 sought to exclude evidence of defects in the roof either before or after 2021, basically asserting that: (1) the issue of roofing construction defects was outside the scope of Burnside's complaint; (2) Burnside lacks individual standing to bring a claim for construction defects; and (3) the Association is not vicariously liable for the actions of a licensed independent roofing contractor.

Specifically, MIL 6 argued that Burnside's first cause of action alleged that the Association breached its contractual duties under the CC&Rs by failing to investigate and remediate water intrusion in her condominium unit which purportedly originated from the condominium building's roof, i.e., common area. And her second cause of action was essentially identical to the first, except it alleged that defendants breached the duty of reasonable care

---

[7] Finally, Burnside's brief cites an unpublished opinion: *People v. Juarez* (Mar. 20, 2025, H050476) [nonpub. opn.]. Passing over whether the case holds as Burnside represents it does, such citation is in direct violation of California Rules of Court, rule 8.1115(a).

by failing to investigate and remediate the purported roof leak.[8]

MIL 6 was based on the fact that information about roof defects were claimed for the first time during expert discovery, when a Burnside expert opined that the roof has three layers despite that the California Building Code prohibits more than two, and still has a ponding issue. Not only does Burnside fail to demonstrate any abuse of discretion in the court's ruling on MIL 6, the fact is that Burnside put in much evidence, including from her expert William Weber, of the allegedly defective roof, whose testimony included numerous references to a "roof leak." In addition to that, Weber testified about "water in between layers of roofing" and "elevated moisture underneath the roof material." And Burnside's counsel questioned defendants' expert Jay Carey about the allegedly illegal layers of roofing, including the work done in March of 2021. In short, despite the trial court's grant of this MIL on construction defects, the jury heard testimony about the allegedly defective roof.

### MIL 4

MIL 4 sought to exclude evidence of leaks in various parts of the property other than in Burnside's unit 305. The motion was made on three grounds: (1) relevancy, (2) hearsay, and (3) Evidence Code section 352. The motion included a lengthy list of leaks set forth in "bullet-point" fashion, a list the court addressed point-by-point, in an argument that spanned over 20 pages. Following the argument, the trial court did not, as Burnside argues, grant the motion except for her unit 305. Rather, as noted above, the trial court granted the motion in part, and denied it in part, and in doing so in fact

---

[8]     The third cause of action was for injunctive relief which is a remedy, not a cause of action. (See *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 65.)

13

noted some of the bullet-point items were moot and others were withdrawn, the effect of which is that some evidence could be introduced.[9]

In any event, Burnside has demonstrated no error. Among other things, MIL 4 argued that the other water intrusion events required preliminary facts showing that the water intrusion originated from a common area, that it caused property damage to Burnside necessitating repairs, that defendants failed to remediate the property damage, and that the damage adversely impacted Burnside's health or property. Burnside failed to show such preliminary facts.

MIL 4 also argued that other water intrusion was based on hearsay. Burnside demonstrated nothing to the contrary, and pointed to no exception to the hearsay rule.

And MIL 4 was based on Evidence Code section 352, as to which the trial court had to consider the impact of other isolated water intrusion events and their tendency to prove Burnside's damages and if they would have resulted in unfair prejudice, confusion of the issues, and an undue consumption of time—as they would have, in a case in which, as Burnside's brief admits, the court "repeatedly" "threatened" counsel "for the trial pace," to the point it caused her paralegal to cry.

Beyond all that, we note that Burnside's assertion that the trial court ruling precluded her from presenting evidence of ponding on the roof and roof leaks is also belied by the record. Indeed, expert Weber, who inspected the property beginning in February 2021 and performed follow-up inspections through 2024, not only gave the testimony discussed above, but also testified

---

[9]     In fact, we note that during the questioning of expert Weber, defendants' attorney objected to questions based on "MIL," which objections were overruled.

14

that Burnside reported roof leaks in 2017 and 2020, and about his own investigation into alleged water intrusion. He also testified on several occasions about ponding water on the roof, and the jury was shown photographs of it.[10] And Weber's reports, photographs, and diagrams were admitted into evidence, providing the jury with the very evidence Burnside now claims was excluded: testimony, photographs, infrared imaging, diagrams, sampling data, and roof-level observations.

### MIL 7

MIL 7 was brought on the ground that Burnside was precluded from recovering damages that were barred by the applicable statutes of limitations, Code of Civil Procedure section 338, subdivisions (b) and (c). The motion was straightforward because it presented the relevant statutes of limitation for property damage (3 years) and negligence (2 years). The motion argued that any claim for damage that accrued on or before November 9, 2017, was time-barred after May 6, 2021. (Code Civ. Proc. § 338, subds. (b), (c); Cal. Rules of Court, Appendix I, Emergency Rules Related to COVID-19, Rule 9 [tolling statute of limitations by 178 days].) Burnside's lawsuit was filed on February 24, 2022, i.e., over nine months after the limitations period expired. Burnside has shown no error.

It is perhaps enough to note that Burnside's complaint did not allege damages starting in 2017. But more importantly, she did not recover any damages at all, so this MIL could not have prejudiced her. Finally, and as noted immediately above, expert Weber testified to leaks as early as 2017.

---

[10] Weber even measured one-and-one-quarter inches of standing water with his tape measure and described the conditions in detail.

15

**Burnside Has Demonstrated No Error in the Trial Court's Other Rulings.**

Burnside's second argument is that the trial court erred in prohibiting cross-examination in her case in chief. The argument asserts that the trial court erred when it ruled that Burnside "could not call [defendants] as adverse witnesses as part of her case-in-chief, citing the California Judge's Bench Book, pointing to the term 'may' as indicating [the trial court's] discretion." Burnside cites no record reference supporting this claim of error, and thus we do not know many things necessary to address the issue. For example, we do not know if Burnside's description of the trial court's claimed ruling is accurate. Or how the issue presented itself. Or when. Or what the parties argued. Or what the trial court said when it ruled. Or whether the witnesses did testify. And when. And what they said. Burnside's failure to support the argument with any reference is fatal to her claim.

Again, Eisenberg is apt. As he puts it:

"**Citation of Appellate Record**: Any statement in a brief concerning matters in the appellate record—whether factual or procedural and no matter where in the brief the reference occurs—*must be supported by a citation to the record*. The purpose of this requirement is to enable appellate justices and staff attorneys to locate relevant portions of the record quickly. ([Cal. Rules of Court, rule] 8.204(a)(1)(C); see *Professional Collection Consultants v. Lauron* (2017) 8 [Cal.App.]5th 958, 970 (quoting text); *Helm v. City of Los Angeles* (2024) 101 [Cal.App.]5th 1219, 1228–1230; 'It is not our role to scour the record to find evidence to support [appellant's] contention or create a triable issue of fact. That burden is [appellant's] alone'].) [¶] . . . [¶]

"When an opening brief fails to make appropriate references to the record in connection with points urged on appeal, the appellate court may treat those points as *waived* or *forfeited*. (*WFG Nat'l Title Ins. Co. v. Wells*

16

*Fargo Bank, N.A.* (2020) 51 [Cal.App.]5th 881, 894—prejudice arguments forfeited for failure to cite record evidence; *Shenouda v. Veterinary Med. Bd.* (2018) 27 [Cal.App.]5th 500, 513–515 . . . .). . . . [¶]. . . .

"The violation of [California Rules of Court rule] 8.204(a)(1)(C) may result in the offending portions of the brief (or even the entire brief) being *disregarded*. (*Young v. California Fish & Game Comm'n* (2018) 24 [Cal.App.]5th 1178, 1190–1191; *Liberty Nat'l Enterprises, L.P. v. Chicago Title Ins. Co.* (2011) 194 [Cal.App.]4th 839, 846—'We look askance at this practice of stating what purport to be facts—and not unimportant facts— without support in the record. This is a violation of the rules . . . with the consequence that such assertions will, at a minimum, be disregarded'].)" (Eisenberg, *supra*, ¶ 9:36.)

Burnside's third issue is "whether a new trial is warranted due to exclusion of critical corroborating documents and testimony." Recognizing a trial court's fundamental power "to control litigation before" it, Burnside's argument asserts some boilerplate regarding relevance, and then describes for over four pages the "documents" allegedly excluded, and then the "fact witnesses," going on to identify four people. As we understand Burnside's position, one of the four witnesses would have testified as to leaks as old as 2012; the other three, who included Burnside's ex-boyfriend and a person who housesat her unit, would have corroborated Burnside's testimony.

Passing over whether any of the witnesses were appropriate to testify in this overlength trial, we note that nowhere in the argument is there any record reference to where, when, or why the rulings were made. Once again, the issue can be deemed forfeited.

As noted (see fn. 4), Burnside's last three arguments either assert cumulative error or are generalized and vague. In sum and in short,

Burnside has demonstrated no error in the trial court's rulings.

But even if she had, she would still not prevail, as she could not demonstrate a miscarriage of justice. Article VI, section 13 of the California Constitution states: "No judgment shall be set aside, or new trial granted, in any cause, . . . or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." Code of Civil Procedure section 475 is similar, stating that "[t]he court must, in every stage of an action, disregard any error, improper ruling . . . , which . . . does not affect the substantial rights of the parties. No judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial . . . . There shall be no presumption that error is prejudicial, or that injury was done if error is shown."

Burnside, challenging the erroneous exclusion of evidence, must demonstrate a "miscarriage of justice," in other words, "that a different result would have been probable if the error had not occurred." (*Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1480.)

As noted, the heart of Burnside's lawsuit was that defendants breached the CC&Rs by failing to maintain or repair the roof. In defense, defendants' roof expert Jay Carey testified that the moisture and condensation in Burnside's unit was from her internal use of the steam shower and that moisture found in the roof cavities had no causal link to roof leaks. And defendants' mold expert Tim Kirk testified that mold infestation in Burnside's unit was caused by her own negligence. In sum, there was expert and documentary evidence that water damage in Burnside's unit 305

18

stemmed from her use of a steam shower, not any building defect.  And Burnside never challenged or objected to the admitted defense exhibits (numbers 400 et seq.) that directly refuted her claims.

In addition, the jury found that Burnside was not excused from performing under the CC&Rs.  Given that, even if the evidence Burnside asserts was erroneously excluded had been admitted, Burnside would have lost the cross complaint, which was based on her violation of the CC&Rs.

As noted, Burnside also appeals the judgments awarding the Association costs and attorney fees against her, and has filed a separate brief in that appeal.  That brief, however, does not attack the amounts awarded, nor assert that the hours claimed by the Association's attorneys or the hourly rates used by the court were excessive.  Rather, the appeal asserts only that the judgments for fees and costs must be set aside because the underlying judgment against her was error.  Since we have held that Burnside's appeal of the underlying judgment fails, so too does her appeal of the fee and cost awards.

## DISPOSITION

The judgments in appeals case nos. A171368 and A174209 are affirmed.  The Association and Bohan shall recover their costs on appeal.

_____

       RICHMAN, ACTING P. J.

We concur.

_____

MILLER, J.

_____

DESAUTELS, J.

(A171368N, A174209N)